[Civ. No. 9718. Third Dist. Oct. 13, 1961.]

JOE M. FREITAS et al., Respondents, v. CITY OF ATWATER et al., Appellants.

JOAO LUIS PARREIRA, SR., et al., Respondents, v. CITY OF ATWATER et al., Appellants.

C. Ray Robinson, Eugene A. Mash, Pillsbury, Madison & Sutro and Winton, Edlefsen & Murphy for Appellants.

Landram, Silveira, Garrett & Goul and L. A. MacNicol for Respondents.

SCHOTTKY, J.—The city of Atwater, the Foremost Food and Chemical Company, Inc., a corporation, and the Davis Canning Company, a corporation, have appealed from an order granting plaintiffs an injunction which restrained the appellants as follows:

1. The city of Atwater was permanently enjoined from (a) delivering to the Atwater Main any more water than the

capacity of its three pipelines into it, or delivering any cannery waste or any sewage effluent from the city's new sewer treatment plant; and (b) enlarging in any way the size of its three pipelines or increasing the burden on the Atwater Main.

2. The Davis Canning Company was permanently enjoined from conveying any water, cannery waste or other substance from its cannery or ponds into the Atwater Main situated on the plaintiffs' property.

3. The Foremost Food and Chemical Company, Inc. (The Blue Dairy Products Company) was permanently enjoined from conveying water or other substance into any portion of the Atwater Main situated on the plaintiffs' property.

This action was commenced by the filing of two separate complaints by various plaintiffs to quiet title and for injunctive relief. The plaintiffs, who are primarily dairymen, live in the vicinity of the Atwater Main, which is south of the city of Atwater. The object of the plaintiff was to prevent the three appealing defendants and one other from continuing to use the Atwater Main for the disposal of their waste water and to prevent the city from discharging the chlorinated effluent from its new sewage treatment plant (which was under construction at the time this action was being tried) into the Atwater Main. By a supplemental complaint damages were also sought against the appellants for pollution of the water in the Atwater Main. The two actions were consolidated for trial. By a stipulation the city of Atwater was dismissed from the suit insofar as the question of damages was concerned. The damage issue has never been tried.

The evidence introduced at the trial disclosed that the Atwater Main was built in 1916 through the lands the plaintiffs now own by a drainage improvement district, which subsequently conveyed the easement for the ditch to the Merced Irrigation District, a public corporation. The Merced Irrigation District is not a party to the action.

Commencing with its incorporation in 1922, the city has used the Atwater Main for the discharge of waters from its storm drainage system and from its municipal swimming pool. This discharge, which is directly into the Atwater Main, has increased as the population of the city has increased. At no time has the city ever obtained permission from anyone to use the Atwater Main.

The cannery and its predecessor have used the Atwater Main since 1940 for disposal of its waste water. In that year

the Merced Irrigation District entered into an agreement with the Ripon Canning Company, Inc., whereby the latter was granted a license to dispose of 1,000 gallons of clear water per minute into the Atwater Main. In 1945 a contract was entered into by the Merced Irrigation District and the Scientific Nutrition Corporation whereby the latter was granted a license to discharge 2,000 gallons per minute of clear uncontaminated water into the Atwater Main. In 1950 a similar agreement was made with the predecessor of the Davis Canning Company, Atwater Packing Corporation. The record also discloses that in 1957 the Merced Irrigation District terminated the license after complaints were received.

There were two separate waste water outlets from the cannery. One of these contained ''cooler water'' which flowed directly into the drain. The other contained ''wash water,'' which might hold waste particles of fruit or vegetables, and flowed first to settling ponds maintained by the cannery and then into the Atwater Main. (This now goes directly into the new sewage treatment plant.)

The creamery discharged its cooler or evaporator water directly into the city's storm drainage system, which eventually went into the Atwater Main. In 1952 the Merced Irrigation District entered into a contract with Blue Seal Dairy Products Company (appellant Foremost) whereby the latter was given a license to dispose of not more than 500 gallons per minute of clear uncontaminated water in the Atwater Main. This agreement too was terminated by the Merced Irrigation District in 1957.

Both the cannery and the creamery continued to dispose of their waters as they had prior to the termination of the agreements.

According to the testimony introduced by the plaintiffs, the pollution of the water in the Atwater Main first became objectionable in 1956. Obnoxious odors emanated from the water of the Atwater Main. In addition, there was evidence that the gases emanating from the Atwater Main burned the eyes. The trial judge, upon stipulation by all parties, made a personal examination of the Atwater Main and found dead fish.

The court found substantially as follows:

That the city of Atwater had established a limited prescriptive right to drain storm water and surface water from a portion of the city through three pipelines into the Atwater Main because of the fact that the pipelines were constructed openly

at a considerable expense without objection and the city had used the pipelines for many years.

That the city had not acquired a right to dispose of any additional amount of water either from its new sewer plant or any other source, nor had it acquired the right to dispose of cannery waste or sewer effluent into the Atwater Main.

That Davis Canning Company had not established a prescriptive right to put any cannery waste or water into the Atwater Main; that the only right it ever had was a permissive right obtained from the Merced Irrigation District.

That the Davis Canning Company had been conveying a part of its waste through pipelines into totally inadequate settling ponds, which resulted in odors offensive to the senses.

That the remaining waste from the canning company, which consisted of fruit and vegetable juices and portions of fruits and vegetables, passed directly into the Atwater Main; that part of the waste material from the cannery attaches to the banks of the Atwater Main and there decays, causing a slimy substance which produces a strong offensive odor.

That the method used by the canning company in disposing of the waste matter from the cannery constituted a public and private nuisance.

That the Foremost Food and Chemical Company, Inc., had not created a nuisance during the time it had used the Atwater Main; that its right to use the Atwater Main was only a permissive right which had been terminated; and that the creamery had not established a prescriptive right to use the Atwater Main.

The order for the injunction as to the city provided:

(a) That the city was enjoined from delivering to the Atwater Main any more water than the present capacity of the three pipelines and from delivering into it any sewage effluent from the new sewage treatment plant or elsewhere in the city.

(b) That the city was enjoined from enlarging either the size of the pipelines, or the size or burden of the Atwater Main.

The order for the injunction as to the Davis Canning Company provided:

That the canning company was enjoined from conveying any water, waste or other substance from its cannery or settling ponds into any portion of the Atwater Main situated on the plaintiffs' property.

The order for the injunction as to the Foremost Food and Chemical Company, Inc., provided:

That the creamery was enjoined from conveying any water, or other substance, into any portion of the Atwater Main situated on the plaintiffs' property.

In arguing for a reversal of the judgment appellant canning company contends that it had established a prescriptive right to dispose of its cooler water into the Atwater Main. The cannery put cooler water directly into the Atwater Main in addition to putting waste water into its settling ponds. There was evidence in this regard that sometimes waste water would be discharged into the Atwater Main. ██ ". . . In this connection it is pertinent to observe that whether the use of the easement is adverse and under a claim of right, or permissive and with the owner's consent, and the nature of the user is sufficient to put the owner on notice, are questions of fact." (*O'Banion* v. *Borba*, 32 Cal.2d 145, 147 [195 P.2d 10].)

██ Since the question of adverse use is one of fact, the question before this court is whether there is substantial evidence in the record to support the decision of the trial court that the cannery did not acquire a prescriptive right to use the Atwater Main as against the plaintiffs. There is evidence in the record that the cannery's predecessors in interest obtained permission from the Merced Irrigation District to discharge water into the Atwater Main. A fee was paid for the license, both by Davis and its predecessors. Under such circumstances the court could well find that Davis Canning Company did not have the proper state of mind to create an adverse use. Here there was evidence of submission to the right of the Merced Irrigation District. This was sufficient to support the finding of the trial court that the use was not adverse to anyone.

██ The canning company also contends that it obtained a claim of right to put its wash water into the Atwater Main (water used to wash the fruit and carry off any unprocessable substance from the fruit). The evidence most favorable to the respondents discloses that the manner in which the settling pond was used constituted a public and private nuisance. The evidence also shows that permission to use the Atwater Main had been obtained from the Merced Irrigation District. If the use were permissive and not adverse, which would be a question of fact, no prescriptive right was obtained and any discussion of nuisance is moot. In any event, the cannery could not obtain a prescriptive right to maintain a public nuisance. (*Wright* v. *Best*, 19 Cal.2d 368 [121 P.2d 702].)

██ "[A] public nuisance may also be a private one, when

it interferes with the enjoyment of land, . . ." (Prosser on Torts (2d ed.), p. 391.) There was evidence that the effluent from the settling pond killed fish in the Atwater Main. This would be a public nuisance. (Prosser on Torts (2d ed.), p. 402.) There was also evidence that the pollution of the Atwater Main caused injury to plaintiffs' cattle and that the gases exuded were injurious to health. One disinterested witness testified the odors reminded him "of stepping into a chemical lab, like sulphuric acid. It burned your nose. It actually burned, and it made your eyes water. It was terrific." Another witness who lived approximately 500 feet from the Atwater Main described the odors as "like something decaying." He also testified that the gases caused a person's eyes, nose, throat and ears to burn. There was additional testimony to the same effect. This also would be a nuisance, but probably only a private one. (See Prosser on Torts (2d ed.), p. 402, where he states that the pollution of a stream which merely inconveniences a number of riparian owners is a private nuisance.) The respondents contended that the pollution of the Atwater Main first became bad in 1956 or 1957, so the right to pollute the stream had not ripened into a prescriptive right at the time this suit was instituted. Respondents, of course, could seek equitable relief to enjoin the private nuisance.

██ Appellant city of Atwater contends that its prescriptive right to use the drain for the disposal of its waste water includes the right to dispose of the purified effluent from its new municipal sewage treatment plant. First it should be pointed out that effluent from the old sewage plant never was a part of the prescriptive right the city obtained in the Atwater Main. The city's prescriptive right was to use the Atwater Main for the disposal of storm drainage waters and water from the municipal swimming pool. This would not be true even under section 479 of the Restatement of Property, which reads: "In ascertaining whether a particular use is permissible under an easement appurtenant created by prescription there must be considered, in addition to the factors enumerated in section 478, the needs which result from a normal evolution in the use of the dominent tenement and the extent to which the satisfaction of those needs increases the burden on the servient tenement."

In comment (c) of section 479 of the Restatement of Property it is stated that "prescriptive interests do not include the

privilege to make uses necessitated by a development of the dominent tenement not foreseeable during the prescriptive period as a normal development of that tenement.''

Here the foreseeable use was storm drainage waters. Effluent from a sewage treatment plant was not foreseeable, particularly since the effluent from the old sewage plant did not flow into the Atwater Main.

The same result is reached by applying section 806 of the Civil Code which states that the extent of a servitude is determined by the nature of the enjoyment by which it was acquired. Here the nature of the enjoyment acquired never included the use of the Atwater Main for the disposal of effluent from the sewage plant.

Both the city and the cannery contend that the trial court erred in issuing a permanent injunction. We do not agree with this contention. A permanent injunction will issue to prevent a wrongful act if its continuance may ripen into an easement in favor of a defendant which will deprive plaintiff of the use and enjoyment of his property or take from him the substance of his estate. (27 Cal.Jur.2d 157.)

 The injunction was proper to prevent both the cannery and the city from acquiring a prescriptive right to use the Atwater Main. The injunction only enjoined the city from discharging its sewage effluent into the Atwater Main. It was proper to prevent the threatened injury under the facts of the instant case. If the city by the exercise of the right of eminent domain obtains the land, the city will be free to use the Atwater Main for the discharge of the effluent from its new plant and the injunction issued in the instant case would be moot.

What we have hereinbefore stated relates to the appeals of the city of Atwater and the Davis Canning Company. The Foremost Food and Chemical Company filed a notice of appeal but has filed no brief in support thereof. As stated in 4 California Jurisprudence 2d at page 332, ''Failure of an appellant to file a brief may be deemed an admission that no cause for reversal exists.'' The failure to file a brief in support of an appeal justifies an appellate court in assuming that the appeal has been abandoned and in dismissing the appeal on its own motion. (*Palmer* v. *Holcomb*, 147 Cal. App.2d 94, 100 [305 P.2d 107]; *Engineering etc. Corp.* v. *Longridge Inv. Co.*, 153 Cal.App.2d 404 [314 P.2d 563].) The

appeal of Foremost Food and Chemical Company is therefore dismissed.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.

A petition for a rehearing was denied November 9, 1961, and appellants' petition for a hearing by the Supreme Court was denied December 6, 1961.