[Civ. No. 28527.   Second Dist., Div. Three.   July 28, 1966.]

PAUL J. REINSCH et al., Plaintiffs and Appellants, v. CITY OF LOS ANGELES et al., Defendants and Respondents.

N. E. Youngblood and Ellis J. Horvitz for Plaintiffs and Appellants.

Roger Arnebergh, City Attorney, Bourke Jones, Assistant City Attorney, and John A. Daly, Deputy City Attorney, for Defendants and Respondents.

FORD, J.—The plaintiffs have appealed from the judgment in an action for an injunction and for declaratory relief with respect to the use by the city and other defendants of a drain-pipe which passes through the plaintiffs' residential property. The judgment does not embody a declaration of the rights of the parties but merely provides that the plaintiffs take nothing by their complaint and that the defendants recover their costs.

The nature of the controversy is disclosed by the findings of fact, which are in part as follows: 1. In 1953 the plaintiffs purchased Lots 1 and 2 of Tract No. 14313 in the City of Los Angeles and are the present owners thereof. 2. Prior to such purchase the plaintiffs knew that the northerly rear portion of

those lots, which had been part of a canyon, had been filled and that the fill was not compacted. 3. The plaintiffs further knew at the time of the purchase that the canyon existed to the west and to the east of Lots 1 and 2 and that "the floor of the canyon to the west of their property was the natural drainage course taken by the waters that fell on the respective walls forming this canyon." 4. The filling of the rear portions of Lots 1 and 2 "constituted a blockage of a natural watercourse." 5. After their purchase of the lots and prior to the construction of any building thereon, the plaintiffs "knew that there was damage caused to the streets, curbs and sidewalks constructed on Tract No. 14313 by the Audraine Development Company [the vendor of Lots 1 and 2], because of the fact that waters flowing down the canyon floor to the west of these lots was blocked by this uncompacted fill." 6. The fill on the plaintiffs' property was not brought to the attention of the Bureau of Engineering of the City of Los Angeles until February 13, 1954, when the damage to such streets, curbs and sidewalks occurred. 7. On November 19, 1954, the plaintiffs signed an agreement with Duncan R. Rimmer (of the Audraine Development Company) that Mr. Rimmer "could install a drainage system which would carry the water flow from the canyon to the north of their property to the large ravine to the south of their property."[1] At that time the floor of the canyon to the west of the plaintiffs' property had not been altered from its natural state. 8. Prior to the making of that agreement the plaintiffs were advised by Mr. Rimmer that the City of Los Angeles was demanding that a drainage pipe be installed across the rear of the plaintiffs' property to carry

---

[1]The body of the writing dated November 19, 1954, which was signed by the plaintiffs and addressed to Mr. Rimmer, is as follows: "The undersigned are the owners of two unimproved residence lots on Chattanooga Street, Pacific Palisades, particularly described as Lots 1 & 2, Tract 14313.

"We understand that you are planning to install a drainage system which will carry the water flowing from the canyon to the north of our property, to the large ravine to the south of our property.

"We understand further that a drainage pipe will have to be installed over the rear of our property approximately 40 feet from the northerly boundary thereof.

"This letter will be your authority to install this drainage pipe approximately 3 feet below ground on the rear part of said Lots 1 & 2 in approximately the position described.

"After completion of the installation, if you request, we will grant to you in writing a permanent easement for said drainage pipe, said grant particularly to describe the location of the said drainage pipe by metes and bounds, as determined by your surveyor.

"Make sure entrance and exist [sic] of pipes are screened for children and animals."

the water from the canyon to the west of their property to the canyon to the east thereof. 9. On April 30, 1956, there was issued by the city to Audraine Development Company a permit to place a 24-inch corrugated metal pipe of a length of 200 feet across the rear of plaintiffs' lots. 10. The storm drainpipe installed pursuant to the permit was placed in such a manner that the westerly opening thereof was approximately at the center and on the floor of the canyon. 11. Thereafter and during the development of Tract No. 20179 (adjoining the plaintiffs' property) the canyon thereon was filled. Such development resulted in the creation of a bank to the west of the plaintiffs' lots. 12. A drainpipe was installed in Tract No. 20179 which drained some of the water of that tract, the terminus of that pipe being located on the property of the defendants Woolf which was immediately to the west of the plaintiffs' property. 13. That pipe was connected with the pipe constructed across the plaintiffs' property at a point just west of the plaintiffs' property "by the end of the year 1956." 14. The city accepted as part of its public drainage system such storm drainpipe installed in the development of Tract No. 20179. 15. Water from approximately the same watershed area is drained through the drainpipe located on the property of the defendants Woolf as was drained prior to the fill of the canyon to the west of the plaintiffs' property. 16. The water from the drainpipe on Tract No. 20179 flows through the pipe placed across the plaintiffs' land "at the same place it would have when the canyon was in its natural state." 17. The storm drainpipe across the plaintiffs' property was installed in accordance with good engineering practice. 18. The plaintiffs knew that when the pipe was installed across their land and connected with the storm drainpipe situated on the defendants Woolf's property, "the pipe running across their property was being used to drain part of the water from Tract No. 20179; the Plaintiffs also knew that this drainage of the water from part of Tract No. 20179, was going to be continuous and uninterrupted."

Some of the conclusions of law are as follows: 1. The statute of limitations commenced to run as against the City of Los Angeles "for any action for a trespass upon or injury to the real property of the Plaintiffs at least by January, 1957." 2. As to the city, this action is barred by reason of the provisions of section 338, subdivision 2, of the Code of Civil Procedure.[2]

---

[2] The present action was commenced on April 10, 1962. Section 338 of the Code of Civil Procedure is in part as follows: "Within three years: ... 2. An action for trespass upon or injury to real property."

3. The plaintiffs are required to maintain the storm drainpipe that exists beneath their property. 4. The city may maintain the connection of its pipe which is on the Woolf property ''for purposes of the drainage of the water from Tract No. 20179.'' 5. There is no damage to the plaintiffs by reason of such connection of the pipe which is situated on the Woolf property, and which is under the control and ownership of the City of Los Angeles, ''due to any inverse condemnation-type action.''

Portions of the testimony given at the trial will be noted. Dr. Reinsch, one of the plaintiffs, testified that after acquiring Lots 1 and 2 by a deed from Audraine Development Company dated August 28, 1953, he and his wife built a residence upon the property in 1958. He was advised of the fill thereon before he purchased the property. There was then a canyon to the northwest with steep walls. It covered an area of several acres. That canyon was from 40 to 60 feet deep as measured from the crest of the ridge. The subdivision of Tract No. 20179 adjacent to his property occurred in 1956 and in the course of such development the canyon was filled. Before that time water ran down the canyon ''when it rained hard.''

Dr. Reinsch further testified that after a heavy rain in the winter of 1953-1954 had resulted in water running over his property, Mr. Rimmer told him that the city had informed him that a drainpipe would have to be installed to carry away the water which came down from the canyon when it rained. Mr. Rimmer said that he needed a letter from Dr. Reinsch giving permission for the installation of the drain. Thereafter Mr. Rimmer sent to the plaintiffs the letter of November 19, 1954 (see footnote 1 of this opinion) which they signed after adding the last sentence thereon. The drainpipe was installed across the plaintiffs' property in 1956 and in that year he learned that the drainpipe installed in the adjacent subdivision (Tract No. 20179) was connected to the pipe which ran across the plaintiffs' property. When he protested to Mr. Rimmer he was told that that was the way the city wanted it done. Dr. Reinsch believed and relied on that information and did not make any further protest ''until recently.''

On cross-examination by counsel for the city, Dr. Reinsch testified that from 1954 to 1956 he was under the impression that the city had an easement across his property for drainage purposes and that impression remained with him from 1956 to 1961 with respect to the storm drainpipe that was placed across his property.

Duncan Rimmer testified that he was the subdivider of Tract No. 14313 (in which plaintiffs' lots are located). He told Dr. Reinsch that it was because of the city's request that he was seeking his permission to install the pipe across his property. The witness would not have installed the pipe if the city had not required it. The city told him that he had closed a watercourse and that he had to open it. He obtained the permit for the placing of the drainpipe across the plaintiffs' property and he and Shea Builders made the installation.

Paul J. Blake testified that he was a registered civil engineer and a member of the firm that did the engineering work for the tract adjacent to the plaintiffs' property. It was a part of the approved plans and of the permit issued by the city that the end of the storm drain on that tract should be connected to the conduit that went across Tract No. 14313, and that connection was made. The storm drain work was constructed at the end of 1956 or in the very early part of 1957. The connection was made at the boundary line between the two tracts.

In the course of the trial the court made a statement with respect to the storm drain constructed on the tract adjacent to the plaintiffs' property and the attorney for the city said that that statement was correct. The court's statement was: "I understand, of course, that it had been dedicated as a storm drain and the City had accepted it as such, and that the City thereafter maintained that portion of the drain which had been dedicated and accepted."[3]

Victor Boesen, who was the owner of Lot 5 in the tract in which the plaintiffs' property was located, testified that his recollection was that the pipe across the plaintiffs' property and the pipe on the tract adjacent thereto were installed at the same time. Mr. Boesen moved onto his property in June 1956,

---

[3]In the course of his subsequent testimony, Mr. Ball of the city's Bureau of Engineering testified as follows with respect to the drainage system on the tract adjoining the plaintiffs' property: "A. The system accepted by the City starts in Lachman Lane; it consists of two catch basins with a connector pipe. It runs in a six-foot storm drain easement along the northerly property line or adjacent to the northerly property line of Lot 14. It then traverses through Lot 13 in a ten-foot storm drain easement to the easterly line of Lot 13 which is contiguous with Lot 1 of Tract 14313. THE COURT: So far up to this point all of this storm drain was installed by the Lachman developers, is that right? THE WITNESS: That is correct. THE COURT: And those easements were obtained and those easement were accepted by the City? THE WITNESS: That is true. . . . THE COURT: By storm drain you mean public storm drain because it had been accepted by the City? THE WITNESS: That is correct. . . ."

and the pipes were installed later in the summer. The pipe on the adjacent tract was installed "after the canyon had been filled entirely clear to the top."

Delmore T. Ball, a civil engineer employed in the Bureau of Engineering of the City of Los Angeles, testified that prior to the making of any improvements or the doing of any grading the canyon was approximately one-third of a mile long and the banks were 60 to 65 feet high. When it rained the surface water would find its way to a channel at the bottom of the canyon which would carry it to a point adjacent to the plaintiffs' property. The Bureau of Engineering first ascertained that there had been an obstruction of this watercourse in back of Lots 1 and 2 of Tract No. 14313 when the final inspection was made. The bureau brought the matter to the attention of the developer and advised him to take remedial action to "unblock" the watercourse and it was recommended that he install a pipe. Otherwise the fill would have to be removed.[4] The plaintiffs were then the owners of Lots 1 and 2. Thereafter a permit was obtained by Audraine Development Company to install the storm drain across the plaintiffs' property. The plan was submitted by the developer. The city did none of the work of installing the pipe. The storm drain was placed at the floor of the canyon as requested by the city. The purpose thereof was "to convey the drainage from the natural watercourse northerly of this obstruction through the obstruction." The city supplied none of the plans and did none of the work with respect to any storm drain on the subdivision adjacent to the plaintiffs' property. Mr. Ball further testified that there is a manhole between the 24-inch pipe on the plaintiffs' property and the 18-inch pipe on the adjacent subdivision. That concrete structure, which is located on the property of the defendants Woolf, makes the connection between the two pipes.[5] The water leaves the adjacent tract at the same place

[4]On cross-examination by counsel for the plaintiffs, Mr. Ball testified as follows: "Q. As I understand your testimony, . . . on behalf of the engineering office of the City of Los Angeles you required the developer that they either install this pipe that has now been installed and is the subject matter of this action or remove the fill and restore the watercourse to its natural state, is that a correct statement? A. This would be a correct statement. Q. And you required that one of those two things be done before you would release the bond for the developer that had been posted in connection with . . . Tract No. 14313, is that right? A. That is correct."

[5]In the course of cross-examination by the plaintiffs' counsel, Mr. Ball testified that the manhole was "for the purpose of maintaining the City pipe to the west, and also would provide an access to the pipe under the Reinsch property if they so chose to make use of it."

at which it left the canyon prior to the development of that subdivision.

Mr. Ball testified that he was on the plaintiffs' property about two years before the trial. He saw no damage to the Reinsch property which, in his opinion, had been caused by the storm drain. When he was on the property during the view by the court in the course of the trial he observed no damage which he believed had been caused by the installation or because of the storm drain being underneath the surface of the ground. The area of watershed involved in the drainage across the plaintiffs' property is approximately the same as it was prior to the development of the adjoining subdivision, there being an increase of an acre or less of drainage area. In response to a question as to the time when he made an inspection after the pipe had been installed across the plaintiffs' property, Mr. Ball testified: "I would estimate some time in the fall of 1956." But he was unable to recall whether the connection with the pipe from the adjoining tract had been made at that time.

Mr. Rimmer was recalled to the witness stand on behalf of the city. He testified that when the pipe was installed across the plaintiffs' property there was "no evidence of any development going on" in the adjoining tract. The pipe was placed so that "it fell right in the center of the bottom of this existing canyon." He did not request or obtain any easement from the plaintiffs at any time. The installation of the pipe on the adjoining tract did not take place at the same time as the installation on the plaintiffs' property.

The plaintiffs assert that a reversal of the judgment is required so that the trial court may consider the controversy in the light of the reasoning expressed in the recent case of *Keys* v. *Romley,* 64 Cal.2d 396 [50 Cal.Rptr. 273, 412 P.2d 529], as to the rights and liabilities of adjoining landowners with respect to the flow of surface waters. But that view is not focused upon the actual issue presented in this case. The core of the matter is whether the city has a right to use the pipe running across the plaintiffs' property in the disposition of waters collected in its drainage system upon the adjoining tract and, if it does have such a right, the nature of its concomitant duties.

A municipal corporation may acquire an easement by prescription.[6] (*Freitas* v. *City of Atwater,* 196 Cal.App.2d

---

[6] In the course of the trial the court granted the plaintiffs' motion to amend the pretrial conference order to add the issue of the matter of damages in the event an injunction should be denied. At that time, in

289, 292-293, 295 [16 Cal.Rptr. 397] ; see *Town of Paden City* v. *Felton,* 136 W.Va. 127, 137 [66 S.E.2d 280, 286] ; *City of Lynchburg* v. *Chesapeake & O. Ry. Co.,* 170 Va. 108, 112 [195 S.E. 510, 512].) The applicable law as to the creation by prescription of an easement across the land of another for the conveyance or disposition of water is stated in *Jones* v. *Harmon,* 175 Cal.App.2d 869, at page 875 [1 Cal.Rptr. 192] : "An easement is an interest in land which may be created by grant, express or implied, or by prescription. (See, generally, 17 Cal.Jur.2d 89, § 2; Burby, Real Property, 78, § 58 et seq.) ▮ And an easement for a pipe or other similar enclosed conduit may be acquired by prescription. (See 3 Tiffany, Real Property, 222-225, § 767.) The same general principles governing the acquisition of easements by prescription apply to the acquisition of the prescriptive right to the use of such underground conduits. (See Annotation: Easement by Prescription in Artificial Drains, Pipes, or Sewers, 55 A.L.R.2d 1144, 1167 et seq.) ▮ To create such an easement the use must be '. . . continuous, uninterrupted, peaceable, adverse and under a claim of right, with notice of which . . .' the servient estate may be charged. (*O'Banion* v. *Borba,* 32 Cal.2d 145, 150 [195 P.2d 10].) Thus an actual, open, and notorious use of an underground conduit, hostile and adverse to the title of the person against whom the claim is made, under claim of right, continuous and uninterrupted for the statutory period of five years (Civ. Code, § 1007) will ripen into an easement by prescription. (*Adams* v. *Estate of Smith,* 88 Cal.App.2d 910 [199 P.2d 730] ; *Hahn* v. *Curtis,* 73 Cal.App.2d 382, 389 [166 P.2d 611] ; *Hails* v. *Martz,* 28 Cal.2d 775, 778 [172 P.2d 52] ; see generally : Cook, *Legal Analysis in the Law of Prescriptive Easements,* 15 So.Cal. L.Rev. 44.)

▮ "As stated in *Lindsay* v. *King,* 138 Cal.App.2d 333,

---

response to the comment of counsel for the city as to the defenses of laches and the statute of limitations, the court said that the city had "every right to assert every possible defense on that issue of damages." When the city thereafter completed the introduction of its evidence, the counsel for the city stated that the city desired to plead the statute of limitations relating to trespass upon or injury to real property (see footnote 2 of this opinion) and the five-year statute relating to the matter of prescription. Thereafter the city filed points and authorities "pertaining to statutes of limitation and prescriptive issues raised by the facts of the case," one sentence thereof being as follows: "Thus an actual, open, and notorious use of an underground conduit, hostile and adverse to the title of the person against whom the claim is made, under claim of right, continuous and uninterrupted for the statutory period of five years will ripen into an easement by prescription." The city cited *Jones* v. *Harmon,* 175 Cal.App.2d 869, 875 [1 Cal.Rptr. 192].

340 [292 P.2d 23] : 'There can be no doubt, of course, that acquisition of a title by prescription requires that there be an invasion of the rights of the owner of the servient estate, because, without such invasion, the owner of the servient estate has no cause of action, and so the statute of limitations never starts to run. (*City of Los Angeles* v. *City of Glendale,* 23 Cal.2d 68 [142 P.2d 289].)' "

One of the findings of fact was expressed in the following language: "That it is true that the terminus of the drainage pipe which was installed on the property owned by Leonard Woolf and Mary Woolf, as a result of the development of Tract No. 20179, was connected with the pipe installed under Watercourse Permit No. 177-WLA, just west of the Plaintiffs' property at a time subsequent to the installation of the pipe constructed under Watercourse Permit No. 177-WLA by the end of the year 1956." As has been noted, one of the conclusions of law was that the statute of limitations commenced to run "as against the City of Los Angeles for any action for a trespass upon or injury to the real property of the Plaintiffs at least by January, 1957." To the extent that the judgment properly denied damages for trespass because of the statute of limitations embodied in section 338, subdivision 2, of the Code of Civil Procedure (cf. *Ocean Shore R.R. Co.* v. *City of Santa Cruz,* 198 Cal.App.2d 267 [17 Cal.Rptr. 892]), it must be upheld. Such an adjudication was obviously based on a determination that the connection of the two pipes and the consequent trespass occurred "at least by January, 1957."

Accordingly, in harmony with the rule that whatever uncertainties may exist in the findings of the trial court are to be so resolved, if reasonably possible, as to support the judgment rather than to defeat it (*Neel* v. *San Antonio Community Hospital,* 176 Cal.App.2d 233, 237 [1 Cal.Rptr. 313]), we construe the ambiguous finding of fact quoted at the beginning of this paragraph to mean that the connection of the two pipes was made "by the end of the year 1956."

The finding as to the time when the two pipes were joined is supported by the evidence, as is shown by the following excerpts from the testimony. Dr. Reinsch testified: "Q. Now, when in point of time, Doctor, did it first come to your attention that the drainpipe which hooked on to connect it with and was connected with the drain across your property from the Lachman [the adjoining] subdivision property? A. This was when it was put in, in 1956." A portion of the testimony of Mr. Blake, who did engineering work with

respect to the adjoining tract, was: "Q. BY MR. YOUNGBLOOD [counsel for the plaintiffs] : Now, Mr. Blake, from the date that I have just indicated to you that appears on this Exhibit 8, can you tell me when the installation was effected where the terminal end of your storm drain was connected with the conduit going across Tract 14313? . . . A. It would be my best recollection that this storm drain work was constructed some time at the end of 1956 or the very early part of 1957."

The only reasonable conclusion to be drawn from the evidence is that the use made by the city of the drainpipe across the plaintiffs' property, after the connection therewith of the drainpipe on the adjoining tract which the city had accepted as its own, was a use which was actual, open and notorious, hostile and adverse to the plaintiffs, under claim of right, continuous and uninterrupted for the statutory period of five years. That the plaintiffs were aware of such adverse use from the time of its inception is clear from the record. It is true that there was no showing that water constantly passed from the city's drainpipe into the pipe across the plaintiffs' land, but, as said in *Edwards* v. *Atchison, T. & S.F. Ry. Co.* (9th Cir. 1926) 15 F.2d 37, at page 38, with respect to a prescriptive right to use land for discharging thereon drainage waters through a culvert: "The interruption of the use by the intervention of a dry season would not disprove continuity. *Hesperia Land Co.* v. *Rogers,* 83 Cal. 10 [23 P. 196, 17 Am.St. Rep. 209]." Under the circumstances of the present case, the use was continuous within the governing law as to prescriptive easements even though there was not a constant flow of water. (See *Scott* v. *Henry,* 196 Cal. 666, 670 [239 P. 314].) Since the adverse use was for a period of more than five years prior to the filing of this action, under the governing law as set forth hereinabove the city acquired an easement for the use of the drainpipe across the plaintiffs' land for the purpose of the conveyance of waters from the adjoining tract.

The prescriptive right to use the drainpipe across the plaintiffs' property acquired by the city gave rise to the concomitant duty on the part of the city to maintain and repair that drainpipe as long as its use continues. (See *Bean* v. *Stoneman,* 104 Cal. 49, 55-56 [37 P. 777, 38 P. 39] ; *Conklin* v. *Goodson,* 125 Cal.App.2d 823, 825 [271 P.2d 147].) The governing law is expressed as follows in 25 Am.Jur.2d, Easements and Licenses § 85, at page 491 : "It is not only the right but the duty of the owner of an easement to keep it in repair;

the owner of the servient tenement is under no duty to maintain or repair it, in the absence of an agreement therefor. The easement owner is not bound, however, to repair and maintain the easement for the benefit of the servient owner, but he may make it as usable as possible for the purpose of the right owned, so long as he does not increase the burden on the servient estate or unreasonably interfere with the rights of the owner thereof.''

As has been noted, the judgment does not contain a declaration of the respective rights of the parties although, under the second cause of action of their complaint, the plaintiffs sought declaratory relief. In such an action the proper function of the trial court is to make a full and complete declaration, disposing of all questions of rights or other legal relations involved in the controversy. (*American Enterprise, Inc.* v. *Van Winkle,* 39 Cal.2d 210, 219 [246 P.2d 935].)

In view of the determination made hereinabove with respect to the acquisition by the city of an easement by prescription, it is unnecessary to discuss the subject of inverse condemnation. (See *Ocean Shore R.R. Co.* v. *City of Santa Cruz, supra,* 198 Cal.App.2d 267, 271-272.)

Finally, an examination of the portions of the record to which the city makes reference in its brief shows that there is no merit in the contention of the plaintiffs that certain findings of fact of the trial court are not supported by the evidence.

The judgment is reversed with directions to the trial court to amend its findings of fact and conclusions of law and enter judgment in accordance with the views herein expressed.

Shinn, P. J., and Kaus, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 14, 1966.