[Civ. No. 8614. Third Dist. Nov. 22, 1955.]

I. H. CUPPS et al., Appellants, v. GALE HENDRICKS et al., Respondents.

*Assigned by Chairman of Judicial Council.

Kasch & Cook for Appellants.

Ralph V. Devoto and Philip C. Crump for Respondents.

SCHOTTKY, J.—Plaintiffs and appellants filed the instant action to rescind a written contract for the sale and purchase of a motel and furnishings located in Lake County, and for judgment in the sum of $15,000 because of respondents' alleged fraudulent representations as to the amount of income they had earned from the operation of the motel. Respondents answered and cross-complained, praying that their title to the property be quieted. Appellants' answer to the cross-complaint disclaimed any right, title, or interest in the property except a lien thereon in the amount, and until the return, of the benefits conferred upon respondents under the contract. The trial court found that appellants' charges of fraud were untrue and entered judgment cancelling the contract and quieting respondents' title to the property. A motion for a new trial was denied and plaintiffs have appealed from the judgment.

The written contract was entered into between the parties on May 24, 1950. The respondents thereby agreed to sell the real and personal property herein involved to the appellants for the sum of $60,000, of which $15,000 was to be paid upon the execution of the contract and the balance, together with 5 per cent interest on the unpaid principal, at the rate of $335 a month, commencing on June 26, 1950. It was provided that the down payment of $15,000, receipt of which was thereby acknowledged, was represented by a deed from appellants to respondents of a house in Colfax, the title to which respondents were to take subject to a deed of trust. During the pendency of this action, respondents exchanged this house for one in Oakland which they thereafter sold. Time was made the essence of the contract and it was provided that if appellants defaulted, the respondents should retain all moneys paid as rent and compensation for the use and occupancy of the premises.

The appellants took possession of the motel on June 1, 1950, and, on July 1st, made a payment of $335 to respondents. However, appellants became dissatisfied with the income realized from the operation of the motel and early in August served respondents with a notice of rescission of the contract of May 24, 1950, on the ground that they were induced to enter into it by fraud practiced upon them by respondents. Never-

theless, appellants remained in possession, and on August 21st paid respondents $165. Respondents testified that it was then agreed that instead of the $335 monthly payments provided for in the contract, the appellants would pay $1,000 on January 1, 1951, and $1,500 semiannually thereafter. This was denied by appellants who claimed they did not withdraw their rescission but were persuaded to remain by respondents' misrepresentation that business improved in the winter and that they would be satisfied with the income. In any event, appellants made no payments after August 21st, but continued to operate the motel until January 1, 1951, when they quit the premises. The instant action was filed on January 8, 1951. Respondents retook possession of the property and on April 15th sold it for $54,000.

Appellants do not attack the findings that there were no fraudulent representations on the part of respondents, as they concede that the evidence on this issue was in substantial conflict, but they contend that the court erred in not finding that they were entitled to restitution in the sum of $15,000 secured by a lien upon the real property here involved. They argue that the conveyance of the Colfax house represented $15,000, that they paid respondents $500 in cash, and added improvements to the motel worth $200 so that they should recover the total of said amounts less $700 chargeable as the reasonable rental value of the motel during seven months' occupancy.

Appellants' principal contention is that: ''A defaulting purchaser of real and personal property, even where the default is 'wilful' is entitled to repayment of the excess of his payments and benefits conferred upon the seller over and above the actual damages suffered by the seller as the result of the default and the reasonable value of the occupancy of the property.''

In the recent case of *Bird* v. *Kenworthy*, 43 Cal.2d 656, the court said at page 659 [277 P.2d 1]:

''In *Freedman* v. *Rector, Wardens & V. of St. Matthias Parish*, 37 Cal.2d 16 [230 P.2d 629, 31 A.L.R.2d 1], it was held that, although the vendee in a conditional contract for the sale of real estate is a willful defaulter, the vendee may recover the amount which constitutes unjust enrichment of the vendor by reason of the termination of the contract. Such recovery may be had though the vendee could receive no relief under section 3275 of the Civil Code.

''To have the benefit of the rule against unjust enrichment, the burden of proof is upon the defaulting vendee to show

that the payments made by him exceed the vendor's damages. (*Major-Blakeney Corp.* v. *Jenkins,* 121 Cal.App.2d 325, 332 [263 P.2d 655] ; *Baffa* v. *Johnson,* 35 Cal.2d 36, 40 [216 P.2d 13].)''

And in *Major-Blakeney Corp.* v. *Jenkins,* 121 Cal.App.2d 325, the court said at page 332 [263 P.2d 655] :

''Where the remedy of specific performance is not possible and restitution offers the only effective relief to a defaulting vendee, relief may be granted if the vendee is able to prove that his down payment exceeds the damages to the vendor produced by his default. (*Barkis* v. *Scott, supra* [34 Cal.2d 116 (208 P.2d 367)], and cases there cited; see *Baffa* v. *Johnson,* 35 Cal.2d 36, 39 [216 P.2d 13].) In *Freedman* v. *Rector, Wardens & V. of St. Matthias Parish,* 37 Cal.2d 16, 20 [230 P.2d 629], relying upon sections 1670, 1671, and 3369 of the Civil Code, the court stated that even a willfully defaulting vendee may be relieved from a forfeiture, since 'the damage provisions of the Civil Code, together with the policy of the law against penalties and forfeitures provide an alternative basis for relief independent of section 3275.' The burden rests upon the defaulting vendee seeking restitution to prove how much of his down payment exceeds the vendor's damages. (*Baffa* v. *Johnson, supra.*)''

As hereinbefore set forth, the respondents agreed to sell the motel property to appellants for the sum of $60,000 and accepted the Colfax residence of appellants as a down payment at an agreed valuation of $15,000. Appellants paid the additional sum of $500 and occupied and operated the motel property for a period of seven months. After respondents retook possession of the property they resold it for $54,000. There is evidence that respondents later traded the Colfax house for a house in Oakland, which was later resold by them. The record is not clear as to how much respondents eventually realized from the Colfax property, but it does show that they did realize in excess of $11,000. Respondents in their cross-complaint sought to quiet their title to the motel property, and appellants in their answer to the cross-complaint re-alleged their charges as to fraud and alleged their right to have returned to them the benefits conferred on respondents by virtue of the contract. The court found against appellants' allegations of fraud and against the allegations of appellants' answer to the cross-complaint, and entered a judgment quieting respondents' title to said property. The court made no findings as to what benefits respondents had received

or if they would be unjustly enriched by the retention of all or a part thereof.

In the case of *Crofoot* v. *Weger*, 109 Cal.App.2d 839 [241 P.2d 1017], which was an action by purchasers seeking relief from forfeiture of payments made under an installment contract, we held that the court should have determined all issues concerning relief and unjust enrichment. We there said at page 842:

"In addition to the foregoing, if the court had found that the breach was wilful or grossly negligent so as to prevent equitable relief under section 3275 of the Civil Code there was still the duty of the court to go further and find whether or not the termination of the contract by the respondents for the appellants' default resulted in the unjust enrichment of the respondents. If such were the result then it would have been the duty of the court to give judgment for so much of the funds paid in as constituted unjust enrichment. (*Freedman* v. *Rector, Wardens & V. of St. Matthias Parish, supra.*) . . . It is apparent that a situation was portrayed by the evidence which would have justified findings of unjust enrichment if relief could not be given through reinstatement of the contract, and it was therefore the duty of the court to proceed and find upon these matters and if it found unjust enrichment had resulted to give judgment for the amount thereof.''

We believe that under the authorities hereinbefore cited it was the duty of the court in the instant case, just as it was in *Crofoot* v. *Weger,* to have determined and made findings upon the issue of unjust enrichment, and that because of its failure to do so the judgment must be reversed.

The judgment is reversed insofar as it fails to adjudicate the issue of unjust enrichment, and the cause remanded with directions to the trial court to proceed, upon the evidence taken or such additional evidence as the parties may see fit to offer, to determine what benefits, if any, respondents have received and if they will be unjustly enriched by the retention of what they have received under the said contract. In all other respects the judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.