[Civ. No. 68021. Second Dist., Div. Seven. Aug. 17, 1983.]

DAVID SMITH et al., Plaintiffs and Respondents, v.
MICHAEL MADY et al., Defendants and Appellants.

COUNSEL

Ralph W. Plummer for Defendants and Appellants.

Charles Theodore Mathews for Plaintiffs and Respondents.

OPINION

**SCHAUER, P. J.**—Defendants, who were defaulting purchasers under an agreement to buy real property from plaintiff sellers, appeal from a judgment after a nonjury trial. On appeal the question presented is whether a defaulting buyer of realty is entitled to credit, against consequential damages charged to buyer, an increased price obtained by the seller upon a quick resale.

The essential facts are not in dispute. In September of 1980, plaintiffs and defendants entered into a written agreement by which defendants were to purchase respondent plaintiffs' residence for a purchase price of $205,000. The sales escrow was to close in early December of 1980. However, defendants defaulted and the sale did not take place. On December 7, 1980, within a few days after the expected close of escrow and breach by defendants, plaintiffs entered into another contract to sell the property to third parties. Under this second sales agreement, the purchase price was $215,000. The second sale proceeded to close in February of 1981.

The instant lawsuit was commenced on December 5, 1980, for breach of the first sales contract. Upon trial the court recognized that there were no "benefit-of-the-bargain" damages under Civil Code section 3307[1] since the purchase price in the rapid resale established that the value of the property at the time of the breach was in excess of the contract price of the earlier sale. However, the trial court found consequential damages under Civil Code section 3300,[2] suffered by sellers for costs of insurance, gardening, property taxes, utilities and encumbrance interest payments incurred between the default and the subsequent sale. The trial judge declined to offset the consequential damages with the increased resale proceeds, remarking upon the separate character of the resale transaction in comparison with the sale to defendants which gave rise to the breach. A judgment for plaintiffs in the sum of $2,648.34[3] was entered and this appeal followed.

The sole issue is whether a defaulting purchaser of real property is entitled to credit, against damages from his default, the increase in proceeds of a subsequent, but rapid, resale at a higher price. We resolve the issue in the affirmative and reverse.

"Under the provisions of Civil Code, section 3307, 'The detriment caused by the breach of an agreement to purchase an estate in real property, is deemed to be the excess, if any, of the amount which would have been due to the seller, under the contract, over the value of the property to him.' But the view that this section is exclusive, and precludes other consequential damages occasioned by the breach, was rejected in *Royer* v. *Carter* (1951) 37 Cal.2d 544, 550 [233 P.2d 539]. Under Civil Code, section 3300, other damages are recoverable, usually embracing the out-of-pocket expenses lost by failure of the transaction." (*Wade* v. *Lake County Title Co.* (1970) 6 Cal.App.3d 824 at p. 830 [86 Cal.Rptr. 182].)

"The Supreme Court in *Royer* (at p. 550) stated that: '. . . the vendee's breach may make it necessary for the vendor to incur *additional expenses*

---

[1]Civil Code, section 3307 provides: "The detriment caused by the breach of an agreement to purchase an estate in real property, is deemed to be the excess, if any, of the amount which would have been due to the seller, under the contract, over the value of the property to him."

[2]Civil Code, section 3300 provides: "For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom."

[3]The sales contract between plaintiffs and defendants provided for reasonable attorneys' fees for the prevailing party in litigation arising out of the agreement, and the trial court awarded plaintiffs such fees in the sum of $750, in addition to the $2,648.34. Since plaintiffs are not prevailing parties in view of the reversal on this appeal, the award of attorneys' fees for trial and appeal services is left to the trial court on the remand. (*Schoolcraft* v. *Ross* (1978) 81 Cal.App.3d 75, 82 [146 Cal.Rptr. 57].)

to realize the benefit of his bargain . . . [and] [w]hen such *additional expenses* are the natural consequence of the breach, they may be recovered in addition to those provided for in section 3307.' (Italics added.) The *Royer* opinion deals specifically with the expenses which the innocent vendor would incur in a second sale. More recent cases have shed further light on the scope of 'additional expenses' which *Royer* sanctioned.

"In *Allen* v. *Enomoto,* 228 Cal.App.2d 798, 803-805 [39 Cal.Rptr. 815], the court allowed the vendor's out-of-pocket expenses for fire insurance, mortgage interest and real property taxes on the subject property. The award was premised on a finding that the vendor had continued diligently to attempt to resell the subject property and that the resale was made within the shortest period of time possible. The unspoken premise of such a holding is that the vendor (who still wishes to sell the property) actually has had to pay out-of-pocket expenses proximately caused by the vendee's breach." (*Abrams* v. *Motter* (1970) 3 Cal.App.3d 828 at pp. 849-850 [83 Cal.Rptr. 855], footnote omitted.)

In both *Abrams* and *Sutter* v. *Madrin* (1969) 269 Cal.App.2d 161 [74 Cal.Rptr. 627] it was recognized that ". . . resale . . . should be made with reasonable diligence to qualify the vendor to an allowance . . ." (*id.* at p. 169) for consequential damages incurred after the breach. Additionally, both cases acknowledged that a vendor's continued ownership after a purchaser's default may have a "use" value which should be offset against expenses of the continuing ownership. (*Id.* at p. 168; *Abrams* v. *Motter, supra,* 3 Cal.App.3d at p. 850.)

The facts in *Sutter* differ somewhat from the instant case in that the *Sutter* defaulting purchaser was seeking restitution of a portion of his deposit under the real estate sales contract. However, we find the fundamentals reviewed in *Sutter* to be equally applicable here. Also pertinent is ". . . the line of cases beginning with *Freedman* v. *Rector etc. of St. Matthias Parish,* 37 Cal.2d 16 [230 P.2d 629, 31 A.L.R.2d 1], which have allowed recovery to a defaulting vendee in order to prevent the vendor from being unjustly enriched as a result of the vendee's default, even where the default has been wilful. (See *Caplan* v. *Schroeder,* 56 Cal.2d 515, 519 [14 Cal.Rptr. 145, 364 P.2d 321]; *Cupps* v. *Hendricks,* 137 Cal.App.2d 211, 213-214 [289 P.2d 810]; *Major-Blakeney Corp.* v. *Jenkins,* 121 Cal.App.2d 325, 332 [263 P.2d 655]; *Crofoot* v. *Weger,* 109 Cal.App.2d 839, 841-843 [241 P.2d 1017].) As indicated by these cases the underlying purpose of the *Freedman* doctrine is to prevent the unjust enrichment of the seller at the expense of the buyer by requiring the former to refund to the latter payments made under the contract in excess of damages suffered by the seller." (*Branche* v. *Hetzel* (1966) 241 Cal.App.2d 801 at p. 807 [51 Cal.Rptr. 188].)

■ The principle we draw from the precedents is that a vendor of real property is not to be "... placed in a better position by the buyer's default. This result is directly prohibited by section 3358 of the Civil Code."[4] (*Barton* v. *White Oak Realty, Inc.* (1969) 271 Cal.App.2d 579 at p. 586 [76 Cal.Rptr. 587]; *Jensen* v. *Dalton* (1970) 9 Cal.App.3d 654, 657 [88 Cal.Rptr. 426]; *Sutter* v. *Madrin, supra,* 269 Cal.App.2d 161.)

Although it is well settled in the foregoing authorities that damages under Civil Code section 3307 for the difference between the contract price and property value may be insufficient to give the vendor the benefit of his bargain and he is entitled also to resale expenses and some costs of continued ownership, he should not be permitted to receive a windfall at the purchaser's expense. We discern no reason to deprive the defaulting purchaser of benefitting from a higher price on resale after continued ownership by seller while crediting the purchaser, as required under *Abrams* and *Sutter,* with the value of use to the seller during continued ownership.

In cases where the resale at a higher price occurs at a time much more distant from the breach than here, the vendor may show a lower property value at the moment of breach as well as increased costs of continuing ownership. ■ However, in the case at bench the resale took place within a few days after the breach and established the value of the the property at the time of breach. Realistically, the vendors here had sold their property to defendants at a price lower than the then value of the real estate. Sellers argue that the damages awarded only place them in the same position they would have been in had the defendants performed the contract, but a sufficient response is that had defendants performed plaintiffs would be in a worse position. By the resale sellers have obtained a $10,000 increment which is more than sufficient to absorb the $2,648.34 in increased costs of continuing ownership.

Inasmuch as under *Abrams* and *Sutter* the vendor has an obligation to resell promptly in order to obtain consequential damages and the resale price may fix the property value as a basis for Civil Code section 3307 damages, we are impelled to conclude that there is no inherent separateness in the original sale and subsequent resale transactions. The increased resale price should not be disregarded in considering an offset to consequential damages awarded to a vendor against a defaulting purchaser of real property.

---

[4]Civil Code, section 3358 provides: "Except as expressly provided by statute, no person can recover a greater amount in damages for the breach of an obligation, than he could have gained by the full performance thereof on both sides."

The judgment is reversed and the cause remanded.[5]

Johnson, J., and Paez, J.,* concurred.

---

[5]See footnote 3, *ante.*
*Assigned by the Chairperson of the Judicial Council.