[No. D001676. Fourth Dist., Div. One. Nov. 19, 1985.]

CHARLES M. SPURGEON et al., Plaintiffs and Respondents, v.
GEORGE J. DRUMHELLER, Defendant and Appellant.

**COUNSEL**

Leon E. Campbell for Defendant and Appellant.

Duke, Gerstel, Shearer & Bregante and Richard D. Bregante for Plaintiffs and Respondents.

**OPINION**

**LEWIS, J.—**

I

FACTS

Appellant George J. Drumheller entered into a written contract on May 1, 1982, to purchase respondents Charles and Sally Spurgeon's residence for $385,000. The terms of sale were Drumheller would take "subject to" two existing deeds of trust, one of which had a balance of $212,000 and was held by Far West Savings and Loan, a state chartered savings institution, and contained a "due on sale" clause. At that time, *Wellenkamp* v. *Bank of America* (1978) 21 Cal.3d 943 [148 Cal.Rptr. 379, 582 P.2d 970], precluded enforcement of a due on sale clause by state chartered institutions unless the lender could demonstrate necessity to prevent impairment of the security or risk of default. Drumheller received a letter from the escrow bank dated June 10, 1982, demanding he complete and return a financial questionnaire from Far West Savings and Loan in order to close the escrow. Drumheller contacted his attorney requesting the escrow be cancelled, and the attorney wrote a letter cancelling the agreement. Respondents filed suit for breach of contract on July 2, 1982.

Respondents relisted the property for sale at $390,000, then dropped the price to $365,000. By November 17, 1982, respondents removed the property from the market. Respondents continue to live in the residence and have never sold it, reoffered it for sale, or intended to sell it since then.

Drumheller alleged a mutual mistake of fact, consisting of a lack of understanding by both parties that the lender, Far West, would "involve itself" in the transaction. The court found there was no such mutual mistake, that appellant was not legally required to respond to Far West in order to complete the purchase, and there was no showing both parties contemplated no financial suitability information would be requested by any existing mortgagee.

The contract price of $385,000 "subject to" the existing encumbrances equated to a cash basis price of $376,090, according to the testimony of respondents' expert, which was the only testimony on the subject of value of the contract. The trial court's statement of decision, No. 12, recites "with regard to the issue of cash value of the contract of sale at the date of the breach, the court is unable to determine what is precisely meant. The contract price was $385,000."

The court found the fair market value of the property reduced to cash as of the date of the breach to be $350,000.

As to value at the time of trial in January 1984, the only evidence was from appellant's expert, whose testimony was the current market value was $385,000, but referred to his report which stated it to be $380,000. He testified that was on an all cash basis. He later testified as to variations from an all cash basis, but that testimony related to value as of 1982. The court's finding on this issue was: "10. With regard to the issue of whether the subject property increased in value from the date of breach to the date of trial, and if so, to what extent, the court's decision is the subject property did increase in fair market value from the date of breach to the date of trial. The court based its decision on the following facts and legal basis:

"a. The fair market value reduced to cash at the date of breach was $350,000.

"b. There was expert testimony that the current market value was $380,000. It was not determined whether this was an all cash basis or otherwise."

The trial court awarded judgment to respondents (sellers) for loss of bargain damages in the sum of $26,090, prejudgment interest at 10 percent from June 23, 1982, cancellation charges of $380, costs of $230.75 and attorney's fees of $6,111.75.

After denial of a motion for new trial, Drumheller appeals, asserting the uncontradicted evidence shows a mutual mistake of a material fact entitling

Drumheller to rescind the contract, the respondents are not entitled to damages as a matter of law, and the amount of damages awarded was incorrect.

## II

■ Drumheller's assertion the uncontradicted evidence shows a mutual mistake of a material fact focuses on Far West "involving itself" in the transaction by requesting financial and credit information from Drumheller. Respondents' expert witness Alan Perry testified that although state chartered institutions were precluded from enforcing the due on sale clause under *Wellenkamp, supra,* 21 Cal.3d 943, absent an ability to demonstrate an impairment of their security or risk of foreclosure, the lending institutions at the time made a practice of requesting or "demanding" information from purchasers buying "subject to" in an effort to cause a renegotiation of the loan rate. (Here, the rate was 11.75 percent on the existing loan and rates in 1982 were higher.) Perry also testified that Drumheller was under no legal obligation to respond to Far West's requests or demands and had the legal right to complete the "subject to" purchase while telling Far West to "go to hell," and the trial court so found.[1] Appellant presses on, contending that misses the point, which is that neither party contemplated Far West would "become involved" by making this demand or request, and that is the mutual mistake.

The court found there was "no showing that both parties contemplated at the time of the contract that no financial suitability information would be requested by any existing mortgagee." Our inquiry is limited to whether any substantial evidence supports this finding, or more accurately, since appellant had the burden of proof on this issue, we look to see whether the state of the evidence compels the finding there was a mutual mistake of a material fact. Appellant argues that under Civil Code section 1577[2] he need only establish a mutual ignorance of a fact or a belief in the present existence of a thing material to the contract which does not exist. Drumheller testified the existing financing was paramount to him, he wanted to avoid any "balloon payment," and he understood "subject to" meant he could continue the existing financing without any involvement of the existing lenders, and he has never been involved with a due on sale clause. Spurgeon

---

[1]Since we decide this case in appellant's favor on other grounds, we do not undertake to here explore the necessity for a purchaser "subject to" an encumbrance to cooperate in the lender's investigation of credit worthiness.

[2]"Mistake of fact is a mistake, not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in:

"1. An unconscious ignorance or forgetfulness of a fact past or present, material to the contract; or,

"2. Belief in the present existence of a thing material to the contract, which does not exist, or in the past existence of such a thing, which has not existed."

had been in the business of building and selling homes, had been involved in eight or ten transactions involving due on sale clauses, and had no reason to believe Drumheller would be sent a request for credit information and no reason to believe he would not. There was no presently existing fact of which Mr. Spurgeon was unaware. We cannot say the trial court's finding is unsupported by the evidence or that the opposite finding was required by the evidence.

### III

The evidence here is the fair market value of the property in terms of cash was $350,000 at the time of breach of the contract in June 1982, and $380,000 at the time of trial in January 1984. The cash basis value of the terms of the contract of sale was $376,090.

■ It is clear that damages for loss of the bargain are measured by comparing the cash value of the contract to the cash fair market value at the time of the breach. (*Royer* v. *Carter* (1951) 37 Cal.2d 544, 549-550 [233 P.2d 539]; *Abrams* v. *Motter* (1970) 3 Cal.App.3d 828, 840-841 [83 Cal.Rptr. 855]; Civ. Code, § 3307.)[3] It is equally clear that despite this rule, if the property increases in value before trial and the vendor resells the property at a price higher than the value of the contract, there are no longer any loss of bargain damages.

*Freedman* v. *The Rector* (1951) 37 Cal.2d 16, 19 [230 P.2d 629, 31 A.L.R.3d 1], observes "[s]ince [seller] resold the property for $2,000 more than [buyer] had agreed to pay for it, it is clear that [seller] suffered no damage as a result of [buyer's] breach." *Smith* v. *Maddy* (1983) 146 Cal.App.3d 129, 133 [194 Cal.Rptr. 42], explains "had [buyers] performed [sellers] would be in a worse position. By the resale sellers have obtained a $10,000 increment which is more than sufficient to absorb the $2,648.34 in increased costs of continuing ownership." ■ The same rule of no loss of bargain damages to the vendor applies where the resale is for the same price as the contract price. (*Royer* v. *Carter, supra,* 37 Cal.2d 544, 550 [" 'Thus in a case where the property is sold at the market value and that value remains constant until after the breach, and the property is then resold at the same price, the vendor could recover no damages under section 3307.' "]; *Allen* v. *Enomoto* (1964) 228 Cal.App.2d 798, 803 [39 Cal.Rptr. 815], five months after the breach ["[seller] sold the property . . . at the same purchase price as that agreed to by [buyer] . . . . There is therefore

---

[3] "The detriment caused by the breach of an agreement to purchase an estate in real property is deemed to be the excess, if any, of the amount which would have been due to the seller under the contract over the value of the property to him or her, consequential damages according to proof, and interest."

no basis in the evidence for any recovery of damages by [seller] from [buyer] under the provisions of section 3307.''].)

■ For the reason that no loss of bargain damages are available to a seller if there is a resale at the same or a higher price than the contract price, the law imposes on the seller of the property the duty to exercise diligence and to make a resale within the shortest time possible. (*Sutter* v. *Madrin* (1969) 269 Cal.App.2d 161, 169 [74 Cal.Rptr. 627].) In discussing the duty to mitigate where the vendee seeks return of a deposit, the *Sutter* court states the requirement that resales be made with reasonable diligence "states a policy applicable to resales of real property. Whether the resale is made one, two or three months later, or whether it be a year or more, it should be made with reasonable diligence to qualify the vendor to an allowance of an off-set against the vendee's claim for restitution of money paid." (269 Cal.App.2d at p. 169.) ■ Although the matter of reasonable diligence in regard to a resale is an issue committed to the sound discretion of the trial court (*ibid.*) here the facts are not in dispute.

■ Mr. Spurgeon's admirably candid testimony was that the primary purposes for selling the property were to achieve some cash for starting a business and to eliminate the large monthly payments on the property, and that these needs were met by a series of loans from Spurgeon's father beginning in July of 1982. The new business was developed into a profitable operation, his need for cash was satisfied, and he no longer had a need to sell the home. It is undisputed that at least since November of 1982, the Spurgeons have not attempted to sell the property and in fact have not and do not now hold the property for sale. To the contrary, since at least November of 1982, the Spurgeons have intended to retain the property as their residence.

Under these circumstances, we hold that as a matter of law respondents did not fulfill their duty to mitigate damages. The property having increased in value by the time of trial to a value exceeding the contract price plus respondents' actual expenses, and the decision to take the property off the market since November 1982 being solely in the control and for the benefit of respondents and for reasons unrelated to the marketability of the property, respondents' duty to mitigate is not satisfied and they can no longer maintain their action for damages. (See 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 670 et seq., p. 567 et seq.)

We recognize no reported case has dealt with the issue presented here, of an increase in value by the time of trial over the value of the contract, but without an actual resale. One reason for the absence of such decisions may very likely be that vendors who do not resell during a rising market rec-

ognize they have an increased increment in their net worth (see *Smith* v. *Maddy, supra,* 146 Cal.App.3d 129, 133) and have thus wiped out loss of bargain damages resulting from the earlier buyer's breach of contract.

The judgment is reversed and the case remanded to the superior court to enter judgment for appellant consistent with this decision.

Kremer, P. J., and Staniforth, J., concurred.

A petition for a rehearing was denied December 19, 1985.