[No. E006215. Fourth Dist., Div. Two. Sept. 24, 1990.]

WILLIAM C. NIELSEN, Plaintiff and Appellant, v.
LISA FARRINGTON, as Conservator, etc., et al., Defendants and
Respondents.

1584

COUNSEL

Dill & Showler and Scott Showler for Plaintiff and Appellant.

Boothby, Ziprick & Yingst and E. Nathan Schilt for Defendants and Respondents.

## OPINION

**HOLLENHORST, Acting P. J.**—This is a dispute between a buyer and seller of real estate regarding what portion, if any, of the buyer's deposit can be retained by seller as damages for buyer's breach of the contract. Buyer contends the court erred in allowing seller damages for adverse tax consequences the seller incurred because the property was not sold in 1986 and erred in not allowing the buyer an offset or credit for the "savings" the seller realized upon resale resulting from the absence of a broker's commission in the resale. Buyer also contends there is no substantial evidence to support the court's finding that seller exercised diligence in reselling the property. As we will explain, we agree the court erred in allowing the seller damages for the adverse tax consequences and will direct the judgment to be reduced accordingly and otherwise affirmed.

### FACTS

Buyer and seller[1] entered into an agreement in October of 1985 whereby buyer agreed to pay the sum of $180,000 for certain real property owned by seller in the City of Redlands. Pursuant to the agreement, buyer deposited the sum of $18,000 in escrow in June of 1986.[2] Pursuant to the escrow instruction, escrow was to close on July 30, 1986.

Shortly before escrow was to close in July of 1986, buyer asked for an extension of time of two weeks to close escrow. Although seller agreed to an extension, seller advised buyer that it was imperative that the sale be closed in 1986 because of the change in the tax laws which would go into effect in 1987. Buyer asked for additional extensions of time and when it became apparent that he could not obtain financing suggested some alternatives such as the seller taking back a note and deed of trust. When these alternatives were rejected, buyer advised seller that he would never voluntarily cancel escrow because he had substantial time and money tied up in the project. From July through December, seller did not affirmatively try to market the property but did receive interest from several other brokers. When these brokers were advised there was an open escrow on the property, they were no longer interested. Seller did not believe the property could be sold while there was an open escrow.

---

[1] Actually the property involved in this transaction was jointly owned by Blanche L. Milakovich and Catherine Hanson. The estate of Blanche Milakovich is in conservatorship with Lisa Farrington and Jenene Milakovich acting as coconservators. We refer to these various parties as "seller" for the sake of convenience only.

[2] The record is not clear as to exactly why escrow was not opened until June of 1986 but it appears the delay was due in part to the existence of the conservatorship. Neither party contends this delay has any relevance.

Escrow was canceled pursuant to written instructions to the escrow officer in February of 1987 and the property was subsequently condemned by the City of Redlands. In September of 1987, the city paid $180,000 for the property.

Seller claimed that as a result of the buyer's default, she was required to pay property taxes in the amount of $1,859.68, $5,435 in taxes which would not have been due had the property been sold in 1986 and $490 in attorneys' fees incurred in an attempt to resolve the dispute with seller in 1986. Seller also contended that any amount awarded as damages should be doubled because the commission agreement with the broker obligated seller to pay broker one-half of any damages seller collected against buyer. The court awarded seller the sum of $7,334.68.

### OFFSET FOR $18,000 COMMISSION

■ Buyer's first contention is that seller was not entitled to any damages because seller netted $18,000 more in the resale of the property than seller would have received had buyer completed the sale. Although acknowledging that no case has allowed a defaulting buyer an offset for expenses "saved" in the resale, buyer argues that *Smith* v. *Mady* (1983) 146 Cal.App.3d 129 [194 Cal.Rptr. 42] supports his position.

In *Smith*, buyer had agreed to purchase seller's residential property for $205,000. Escrow was to close in December of 1980 but did not because of buyer's default. On December 7, 1980, a few days after the expected close of escrow date and buyer's breach, seller entered into another contract with a third party to sell the property for $215,000. The trial court found that the second contract price established the value of the property at the time of buyer's breach and accordingly determined that seller was not entitled to any benefit-of-the-bargain damages under Civil Code section 3307.[3] The trial court did, however, award seller consequential damages for costs of insurance, gardening, property taxes, utilities and encumbrance interest payments incurred between the date of the breach and the subsequent sale.

In reversing, the appellate court determined that since the resale occurred within a few days after the buyer's breach, the resale price effectively established the fair market value of the property at the time of the breach. (146 Cal.App.3d at p. 133.) Thus, if the buyer would have completed the

---

[3] Civil Code section 3307 provides that "[t]he detriment caused by the breach of an agreement to purchase an estate in real property is deemed to be the excess, if any, of the amount which would have been due to the seller under the contract over the value of the property . . . ." It is generally recognized that this benefit-of-the-bargain damage is the difference between the contract price and the fair market value of the property at the time of the breach.

purchase, the seller would have lost $10,000, i.e, the difference between the value of the property, $215,000 and the sales price of $205,000. By reselling the property for an amount equivalent to the value of the land, the seller actually gained or profited in the amount of $10,000 which was more than sufficient to compensate seller for the consequential damages of approximately $2,500. The court concluded that the buyer should be entitled to offset this gain against the seller's claim of consequential damages. It went on to state, however, that if "the resale at a higher price occurs at a time much more distant from the breach . . . the vendor may show a lower property value at the moment of breach as well as increased costs of continuing ownership." (*Ibid.*)

Central to the court's determination in *Smith* that the buyer was entitled to an offset was its determination that the resale price established the value of the property at the date of breach. From this the court was able to establish that not only did the seller not suffer any benefit-of-the-bargain damage but in fact the seller actually gained $10,000 from the buyer's breach. The same is not true in this case.

Here, we have no evidence of the value of the property at the time of the buyer's breach in 1986. ■ ■■ ■■ ■ The sale to the city did not occur until over a year later in September of 1987 and therefore does not, on its face, establish the value at time of breach.[4] Without knowing the value of the property at the time of breach, we cannot determine whether the seller suffered any benefit-of-the-bargain damages, i.e., whether the original contract price of $180,000 was greater than the value of the property at the time of buyer's breach or whether as in *Smith*, the seller actually gained by buyer's breach in that the property had a value in excess of the contract price at the time of buyer's breach.[5]

Because there is no evidence of the value of the property at the time of the breach, neither the trial court nor this court is required to determine whether benefit-of-the bargain damages should be based simply on the difference

---

[4] On appeal, the judgment is presumed to be correct. All conflicts in the evidence are resolved in favor of the defendant and all legitimate and reasonable inferences are indulged in to uphold the judgment. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 278, p. 289.) Accordingly, as the trial court made no express finding that the resale price established the value of the property at the time of the breach, we presume that, to the contrary, the trial court determined the resale, which occurred a year after the breach, did not establish the property value in 1986.

[5] Ordinarily the seller would need to establish the value of the property at the time of breach if the seller is seeking benefit-of-the-bargain damages. Here, however, the seller was seeking only consequential damages. Accordingly, the buyer was required to establish the value of the property at time of breach in order to seek an offset. (*Askari* v. *R & R Land Co.* (1986) 179 Cal.App.3d 1101, 1112 [225 Cal.Rptr. 285]: buyer bears the burden of proof in establishing the property's fair market value under any offset theory.)

between the contract price and the value of the property or whether the broker's commission should be deducted from the contract price before measuring the difference.[6] The court did not err in refusing to offset the "savings" of the broker's commission.

### ADVERSE TAX CONSEQUENCES

██ Buyer also contends the court erred in awarding seller the sum of $5,435 for taxes seller had to pay because the property was not sold until 1987 and which seller would not have had to pay if the property had been sold in 1986. The parties agree that these damages generally are not recoverable unless there are special circumstances which were known or should have been known to the defaulting party at the time the contract was entered. (*Walker* v. *Signal Companies, Inc.* (1978) 84 Cal.App.3d 982, 993 [149 Cal.Rptr. 119].)

"The requirement of *knowledge or notice* as a prerequisite to the recovery of special damages is based on the theory that a party does not and cannot assume limitless responsibility for all consequences of a breach, and that at the time of contracting he must be advised of the facts concerning special harm which might result therefrom, in order that he may determine whether or not to accept the risk of contracting." (1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 815, p. 733, original italics.) There is no evidence that the changes in the tax law which went into effect in 1987 and thus made a sale in 1986 more advantageous to seller were known or contemplated by the parties at the time the contract was originally entered in October of 1985. In fact, the court specifically found that there was no discussion of the tax effects of closing in 1986 when the contract was originally entered.

Seller argues, however, because the contract was modified to extend the time for performance and because buyer was advised of the need to close in 1986 at that time, the taxes are recoverable. The seller in essence argues that if a contract is modified, and the damages flow from a breach of the modified provision then, in determining whether special damages are recoverable we should consider the knowledge the defaulting party had at the time the agreement is modified. Even if we were to accept this argument, we would still not find the tax consequences recoverable because these tax

---

[6] In that regard, however, we note that in *Caplan* v. *Schroeder* (1961) 56 Cal.2d 515, 521 [15 Cal.Rptr. 145, 364 P.2d 321], the court held that the seller was entitled to deduct the broker's commission paid in connection with the first sale even though the seller had resold the property without the assistance of a broker and therefore actually saved the expense of a second broker's fee stating, "[sellers], not [buyers], are entitled to the benefit of any savings [sellers] effected by reselling their property without the assistance of a broker."

consequences were not caused by the buyer's failure to perform within the extended time. If the seller had advised buyer that escrow had to close by August 16, 1986, to avoid certain consequences and buyer had sought and obtained an extension of time to that date with full knowledge of the consequences should he be unable to perform, then seller's argument might have merit. In that situation, it could be argued that buyer "contracted," i.e., modified the contract, with this specific risk in mind.

Here, however, the buyer's failure to close by August 16th did not cause the seller's adverse tax consequences. Rather the taxes were caused by seller's inability to resell the property in 1986 which arguably was caused by the buyer's refusal to cancel escrow. In that regard, it is true that buyer stated that he would never voluntarily cancel escrow. But this, by itself, does not establish a breach of contract. The evidence also shows that the only cancellation instructions buyer was asked to sign in 1986 included a provision obligating him to forfeit the deposit. There is no evidence that the escrow instructions required buyer to forfeit the deposit if he failed to perform.[7]

As the court erred in awarding seller the amount of $5,435 for the taxes paid, this amount must be deducted from the judgment and a modified judgment in the amount of $1,899.68 shall be entered.[8]

## SELLER'S REASONABLE DILIGENCE

Buyer's final claim is that there is no substantial evidence to support the trial court's finding that seller exercised diligence in attempting to resell the property. Buyer contends that seller's good faith, but mistaken, belief that she could not resell the property while the escrow remained open does not justify a finding of reasonable diligence.

The obligation on the seller to exercise diligence and attempt to resell the property in order to obtain consequential damages is based on the party's duty to mitigate damages. (*Spurgeon* v. *Drumheller* (1985) 174 Cal.App.3d 659, 665 [220 Cal.Rptr. 195].) Whether a party has exercised diligence in attempting to mitigate damages is a question for the trial court

---

[7] The buyer's refusal to cancel escrow, if wrongful at all, although not a breach of contract, might be a tort. Here, however, the damages were awarded as contract damages, not tort. We note that seller attempted to state a tort cause of action based on buyer's refusal to cancel escrow in its third cause of action for slander of title. The trial court dismissed this cause of action. Because seller has not cross-appealed, we do not decide whether the refusal to cancel escrow would constitute slander of title.

[8] Seller shall be entitled to interest on the modified judgment from the date of entry of the original judgment.

which will be upheld on appeal if there is substantial evidence. (*Sackett* v. *Spindler* (1967) 248 Cal.App.2d 220, 239 [56 Cal.Rptr. 435].)

██ Although seller had received interest in the property from other potential buyers, these buyers lost interest when advised there was an open escrow on the property. More than likely, had seller attempted to proceed with a sale while escrow was still open, she would have had to reduce the price on the property in order to entice a reluctant buyer. Moreover, seller's reluctance to enter into a second sale while escrow was still open with buyer was induced in part by the buyer's statement that he would never voluntarily cancel escrow because of the amount of time and money he had expended on the project. Further, after escrow was canceled, the property was condemned by the city and thus there would have been little purpose in attempting to resell the property at that time. Accordingly, there is substantial evidence to support the court's finding.

## DISPOSITION

The award of damages to seller is reduced to $1,899.68 and the judgment is modified accordingly. The judgment as modified is affirmed. Each party shall bear its own costs on appeal.

Dabney, J., and McDaniel, J.,* concurred.

Respondents' petition for review by the Supreme Court was denied January 4, 1991.

---

\* Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.