Filed 10/24/23  Casa Verde Landscaping Maintenance Corp. v. Lennar Communities CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| CASA VERDE LANDSCAPING MAINTENANCE CORP., | D081550 |
| Plaintiff, Cross-defendant, and Appellant, | (Super. Ct. No. CIVDS1907285) |
| v. | |
| LENNAR COMMUNITIES, INC., et al., | |
| Defendants, Cross-complainants, and Respondents. | |


APPEAL from a judgment of the Superior Court of San Bernardino County, Bryan F. Foster, Judge.  Reversed and remanded with instructions.

Law Offices of Robert F. Schauer, Noah K. McCall for the Plaintiff, Cross-defendant, and Appellant.

Watt, Tieder, Hoffar & Fitzgerald, LLP, Jane G. Kearl and Christopher M. Bunge for the Defendants, Cross-complainants, and Respondents.

# I. INTRODUCTION

This appeal involves two contracts executed between Casa Verde Landscaping Maintenance Corp. (Casa Verde) and Lennar Homes of California, Inc. and Lennar Communities, Inc. (collectively, Lennar).

As a part of its development agreement with the City of Redlands (City), Lennar was obligated to construct, maintain, and turn over a park (the Groves Project) to the City for public use. Lennar subcontracted these responsibilities to Casa Verde. Concurrently, Casa Verde was contracted with Lennar to work on a separate project in Moreno Valley (the Meadow Creek Project).

Casa Verde successfully completed the construction phase of the Groves Project, however, during the maintenance phase grass and plant material began to die – this delayed the Groves Project's turn over to the City. Consequently, Lennar withheld payments owed to Casa Verde, for both the Groves Project and the Meadow Creek Project. Casa Verde subsequently filed suit to recover the withheld payments from Lennar, alleging a breach of contract of both the Groves Project and the Meadow Creek Project. Lennar filed a cross-complaint for a breach of the Groves Project contract.

After a three-day bench trial, the court outlined its concerns stating, "I'm going to give you some initial impressions on this, so you can address those in your [written] closing argument." The court then outlined these areas: (1) Whether Casa Verde breached its contract by failing to get the park's landscaping to an acceptable level or, alternatively, had Casa Verde substantially complied with the contract by the time Lennar stopped paying Casa Verde for its work; (2) Whether Lennar's apparent delay in terminating Casa Verde's maintenance phase duties entitled Casa Verde to damages

2

mitigation on the Groves Project; and (3) Whether the liquidated damages provision in the parties' contract applied in this dispute.

On November 4, 2021, Casa Verde filed its closing brief.[1]  On November 22, 2021, the court issued a tentative statement of decision (SOD). The SOD failed to address the issues the court itself outlined to the parties. The tentative SOD found for Lennar on its cross-complaint for breach of contract, awarding it $91,553.94.  Casa Verde timely objected to the proposed SOD.  The court later affirmed its tentative SOD without change.  Casa Verde next filed a motion under Code of Civil Procedure section 663[2] to set aside the judgment and enter a new judgment.  The trial court summarily denied the motion.

On appeal, Casa Verde contends the trial court, in computing damages, failed to make findings on several controverted issues including those the court raised.  Casa Verde therefore contends that the doctrine of implied findings is inapplicable (see §§ 632, 634, discussed *post*); that the court's damage calculations are not supported by substantial evidence; and that the judgment for Lennar should be reversed and a new judgment entered for Casa Verde in the amount of $21,697.46.

Lennar responds substantial evidence supports the court's damage computations and that Casa Verde seeks to relitigate issues decided against it when it objected to the tentative SOD and moved to set aside the judgment. Lennar argues further that Casa Verde "waived" certain objections presented in its appeal by not raising them during trial and then not proffering sufficient supporting evidence to sustain them.

---

[1]    The Register of Actions reflects Lennar lodged but did not file a closing brief.  However, Lennar's closing argument is part of our augmented record.

[2]    All further statutory references are to the Code of Civil Procedure.

3

We conclude the trial court failed to make findings on controverted issues as explained both in Casa Verde's objections to the SOD and in its motion to set aside the judgment. We further find that given this failure and the SOD's resulting lack of clarity, we are unable to apply the doctrine of implied findings to the contested issues. Because the court's SOD frustrates the statutory statement of decision process, we cannot determine whether, as a matter of law, the judgment is correct.

However, we conclude a completely new trial is unnecessary because Casa Verde on appeal does not dispute that it breached the maintenance phase of the Groves Project contract. Instead, on remand we direct the trial court to (1) vacate the judgment, its findings of fact, and its conclusions of law as they pertain to the damage award for Casa Verde's breach of contract; (2) decide whether, if at all, to allow the parties to introduce any additional evidence or argument regarding damages; (3) make new findings of fact and conclusions of law based on evidence previously presented and additional evidence, if any; and (4) enter a new judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Groves Contract.

Lennar and Casa Verde executed the Groves Contract in 2017. Pursuant to the agreement Casa Verde would provide labor and materials related to hardscape construction, landscaping services, and park maintenance for the Groves Project. The park included a "playground, walking trails and fields that [were] adjacent to a subdivision development owned by [Lennar]. Casa Verde's scope of work principally included the construction of the park's hardscape and softscape components including grass turf, plants, trees, and irrigation."

4

The initial contract provided that Lennar would pay Casa Verde $617,579.65, which included four months of landscape maintenance once Casa Verde completed the park. The parties subsequently executed change orders to the Groves Contract. Relevant to this appeal are change order Nos. 1 and 2. Change order No. 1 increased the contract cost by $8,700 to add grading and vegetation removal. Change order No. 2 added a second project phase which would include 12 additional months of park landscape maintenance beyond the initial four months. Lennar agreed to pay Casa Verde $42,960 in 12 equal, monthly installments for this work.

The Groves Contract allowed Lennar a 10 percent retention from each payment to Casa Verde (including for work pursuant to change orders Nos. 1 and 2).[3] Lennar would release the retained funds once Casa Verde satisfactorily completed its obligations, signed lien releases and waivers, and both Lennar and the City accepted the park.

The park area consisted of "bare dirt" when Casa Verde began work in 2017. Casa Verde completed phase one in February 2018 to the satisfaction of Lennar and the City. Phase two began shortly afterwards, on March 1, 2018.

### B. Park Maintenance.

#### 1. Both Sides Agree Lennar Made Only Two Monthly Payments.

Casa Verde's president, Frank Fontes, testified at trial that Lennar made only two payments to Casa Verde under change order No. 2. Teresa Bliven, the account manager of Casa Verde, testified she prepared a

---

[3] Regarding change order No. 2, Casa Verde billed Lennar $3,580 monthly. Lennar retained 10% of that, or $358 per month. Casa Verde received the $3,222 balance for each month Lennar paid on the contract.

"customer open balance sheet" (Exhibit 12) showing Lennar paid Casa Verde a total of $6,444 (two payments less the 10 percent retention). She further testified Lennar owed Casa Verde $115,592.46 for its work on the Groves and Meadow Creek Projects.

During testimony, Lennar's vice-president Geoffrey Smith agreed his company made only two payments under change order No. 2. Lennar then stopped paying Casa Verde due to Casa Verde's nonperformance on the Groves Contract.[4] Smith testified he decided about "four or five months" before Lennar terminated the Groves Contract on December 28, 2018 that Casa Verde was in breach. In the interim, Lennar searched for a substitute subcontractor to take over the park's landscape maintenance.

### 2. *Lennar Contracts with Another Landscaping Firm at Additional Cost.*

In January 2019, Lennar entered into a contract with Park West Landscape (Park West) agreeing to pay Park West $118,150 to complete the park's maintenance phase. Smith testified the new agreement included replacement of "metal edging" that was outside Casa Verde's scope of work. Lennar subsequently agreed to a $20,328.82 change order with Park West for additional trees and other plant material.

At the time of trial, Lennar still held $61,757.97 in retained funds from Casa Verde's Groves Contract. Smith testified Lennar also withheld from Casa Verde $18,548.50 in retained funds from the Meadow Creek Project even though Smith confirmed Lennar had no claim against Casa Verde for its Meadow Creek Project work.

---

[4] Mr. Smith also speculated that Casa Verde could have stopped sending invoices.

### 3. *Park Turn Over to the City is Delayed.*

Casa Verde's 12-month additional maintenance phase completion date was targeted for March 1, 2019. However, the park turnover to the City did not occur until late September 2019. Smith testified that Casa Verde's nonperformance on change order No. 2 delayed the park hand over to the City by about six or seven months. He testified this delay resulted in Lennar incurring $39,886.44 in additional water charges.

Brian King, Lennar's project manager, testified he took photographs of the park's condition in July 2018. King said he sent the pictures to Casa Verde, requesting a meeting to "walk the park" to address what he considered landscaping "deficiencies," including the turf. King observed the circumstances did not improve over the next two months, even after he met with Ricardo Sierra, Casa Verde's maintenance manager. Sierra agreed with King's assessment that some of the turf did not look good and appeared overwatered in places.

### 4. *Even Though Lennar Decided to Terminate the Contract with Lennar in July or August 2018, Lennar Continues Working with Casa Verde on the Park Until Late December 2018.*

In late October 2018, King received an email from a Lennar consultant stating the City expressed reservations about "bare areas" in the park's turf and other landscaping issues, determining it was not ready for turn over. When asked whether he saw any improvements to turf conditions between July 2018 and October 2018, King testified, "[n]one whatsoever."

However, King continued to engage Casa Verde and complain about the landscaping problems until December 18, 2018, when he emailed Casa Verde asking for a "plan to bring the park back up to turn[]over condition." Casa Verde responded the following day, stating it had been "fertilizing and

7

adjusting the irrigation on a regular basis," had "hydroseeded several times," and going forward would continue to fertilize the turf. King considered this response inadequate and, "after this December 19 email," concluded Casa Verde had no "satisfactory plan to rehabilitate the park." With Smith's approval, King notified Casa Verde by email on December 28 that Lennar needed to "move on with someone else to complete this park to turn[]over status."

### C. The Tentative SOD and Damages Computation.

In its tentative SOD, the trial court found Casa Verde breached the Groves Contract by failing to adequately maintain the park's landscaping. Specifically, the court found "problems" developed in the park shortly after the 12-month maintenance phase began in February 2018[5] when the turf, plants, and trees started dying; when Lennar had discussions and complained to Casa Verde about the "deteriorated conditions" in the park; and that the condition of the park in August 2018 "showed the continued existence of multiple weeds, vast bare spots and fields of dead grass."

The trial court found Lennar paid Casa Verde $17,184 for "work performed between February to April, 2018" under change order No. 2, then "withheld monthly payments starting in April 2018" as a result of "disputes regarding quality of the work that Casa Verde was performing." It also found Casa Verde's "failure" to "fulfill the obligations of the contract became evident at the time that Lennar withheld payment"; that Lennar withheld $27,188.50 on the Meadow Creek Project "as a result of problems at the Grove[s] [P]roject"; that on December 28, 2018, "pursuant to the term of the contract, Lennar exercised its right to terminate[] Casa Verde's services early"; and

---

5       But see footnote 8, *post*.

that the turn over of the park to the City should have taken place no later than March 2019, but the park instead "was turned over to the City of Redlands on September 30, 2019, a delay of 7 months from the scheduled turn over date."

The trial court found Lennar spent $113,176 to complete Casa Verde's scope of work, broken down as follows:

| | |
|---|---|
| Payment to Casa Verde | $17,184.00 |
| Payment to Park West | $95,992.00[6] |
| Total | $113,176.00[.] |

The court also determined Lennar incurred "delay damages for additional water costs in the amount of $39,886.44," for a "total expenditure" of $153,062.44.

The trial court next found Lennar retained $18,548.50 from the "unrelated" Meadow Creek Project, and credited Casa Verde $42,960 for change order No. 2, for a total offset of $61,508.50. The court reduced Lennar's "total expenditure" by the amount of this offset, awarding Lennar $91,553.94 in damages (i.e., $153,062.44 - $61,508.50).

### D. Casa Verde's Objections.

In response to the tentative SOD, Casa Verde filed a Request for Further Factual and Legal Explanation of Material Issues (Request for Explanation) seeking clarification on several issues including:

"[W]hy the court allocated $17,184.00 as a cost [p]aid by Lennar" under change order No. 2 when the "actual amount paid was shown to be $6,444.00."

---

6    In calculating this amount, the court excluded Lennar's payments of $22,158 for replacement of the metal edging in the park.

9

"[W]hy the court did not allocate to Plaintiff in its damages calculations the retention amount under the Groves Contract of $61,757.96" when "[t]his evidence was uncontested in favor of Plaintiff."

"[W]hy the court did not allocate in its damages calculations the $870 owed to Plaintiff" under change order No. 1 when "[t]his evidence was uncontested in favor of Plaintiff."

"[W]hy the court recites a balance on the Meadow Creek Contract of $27,188.50 [citation], but then allocates only $18,548.50 to Casa Verde in its calculation of damages."

"[W]hy Lennar is not charged an offset of its damages that it failed to mitigate. As the court finds in its Statement of Decision, 'The failure on [Casa Verde's] part to properly fulfill the obligations of the contract became eviden[t] at the time that Lennar withheld payment.' [Citation.] If that is true, then Lennar should not have kept Casa Verde working for free for the next 7 months. Lennar should have terminated Casa Verde and gotten a replacement or be held liable for failing to mitigate its damages for those 7 months. . . . Lennar claims delay damages of $39,886.44. Those delay damages are caused by Lennar's failure to mitigate. . . . As the court finds, Park West could have finished in 8 months, meaning only one month of delay, instead of nine months."

Lennar opposed Casa Verde's Request for Explanation, claiming the trial court resolved the above issues in Lennar's favor and that Casa Verde was attempting to "relitigate or reargue" them. Lennar then argued that under the circumstances section 634, which governs the right to object to a court's statement of decision, did not apply. It also claimed substantial evidence supported the court's accounting of damages and Casa Verde failed to proffer any support for its own damage calculations.

10

The trial court subsequently affirmed its tentative SOD without change and entered judgment for Lennar in late December 2021.

### E. Set-Aside Motion.

Casa Verde in its timely motion to set aside the judgment and enter a new judgment under section 663 (Set-Aside Motion) argued the trial court failed to properly calculate damages, repeating the same contentions it made in its Request for Explanation. It also argued the court "failed to preclude delay damages for the water bills because the Groves Contract only allows Lennar Communities to recover liquidated damages in lieu of delay damages in the amount of five percent (5%) of the daily contract price."

The unreported hearing on the Set-Aside Motion took place in mid-March 2022. The trial court took the matter under submission, summarily denying the motion later that day.

## III.  DISCUSSION

### A.  Guiding Principles.

#### 1.  Substantial Evidence and the Doctrine of Implied Findings.

In reviewing a judgment based on a statement of decision following a bench trial we review the trial courts findings of fact for substantial evidence. (*Niko v. Foreman* (2006) 144 Cal.App.4th 344, 364 (*Niko*).) Under this standard, findings of fact are construed to support the judgment and we consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings. (*Citizens Business Bank v. Gevorgian* (2013) 218 Cal.App.4th 602, 613 (*Gevorgian*).)

The testimony of a single witness is sufficient to support a finding. (*Gevorgian, supra,* 218 Cal.App.4th at p. 613.) As a reviewing court, it is not

11

our role to reweigh the evidence or to assess witness credibility. (*Niko*, *supra*, 144 Cal.App.4th at p. 365.) "A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 (*Arceneaux*).) Specifically, "[u]nder the doctrine of implied findings, the reviewing court must infer, following a bench trial, that the trial court impliedly made every factual finding necessary to support its decision." (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 48 (*Fladeboe*).)

### 2. *Statements of Decision and Preservation of Objections.*

California Rules of Court, rule 3.1590(d)-(g), outlines the procedure for a statement of decision. This statutory process protects "[t]he right to findings [as] a substantial right, as inviolate, under the statute, as that of trial by jury under the constitution. [Citation.] The code provision requiring written findings of fact is for the benefit of the court and the parties. To the court it gives an opportunity to place upon [the] record, in definite written form, its view of the facts and the law of the case, and to make the case easily reviewable on appeal by exhibiting the exact grounds upon which judgment rests. To the parties, it furnishes the means, in many instances, of having their cause reviewed without great expense." (*Whittington v. McKinney* (1991) 234 Cal.App.3d 123, 126-127, italics omitted.)

A trial court's statement of decision " 'is sufficient if it fairly discloses the court's determination as to the ultimate facts and material issues in the case.' " (*Ermoian v. Desert Hospital* (2007) 152 Cal.App.4th 475, 500 (*Ermoian*).) An " 'ultimate fact' generally refers to a core fact, such as an essential element of a claim," in contrast to "evidentiary facts" and "legal

12

conclusions." (*Central Valley General Hospital v. Smith* (2008) 162 Cal.App.4th 501, 513.) "[A] trial court is not required to respond point by point to issues posed in a request for a statement of decision." (*Ermoian*, at pp. 499-500 [rejecting appellant's contention that the trial court was required to address 92 paragraphs of issues because the paragraphs were "general, nonspecific objections" by appellant presented "in a scattershot fashion"].) Nor is a trial court obligated to make findings regarding "detailed evidentiary facts or to make minute findings as to individual items of evidence." (*Nunes Turfgrass, Inc. v. Vaughan–Jacklin Seed Co.* (1988) 200 Cal.App.3d 1518, 1525.)

Sections 632 and 634 "establish a two-step procedure for requesting a statement of decision and preserving objections for pursuit on appeal. First, following the court's announcement of its tentative decision, section 632 requires a party to specify, in timely fashion and in proper form, 'those controverted issues as to which the party is requesting a statement of decision. After a party has requested the statement, any party may make proposals as to the content of the statement of decision.' This initial step serves the function of advising the trial court of exactly what issues the parties view as materially controverted at the close of the evidence, just as the process of settling jury instructions serves to frame issues for decision by the fact finder in the jury trial setting. Second, section 634[7] requires that any omissions or ambiguities in the statement of decision must be 'brought to

---

7    Section 634 provides: "When a statement of decision does not resolve a controverted issue, or if the statement is ambiguous and the record shows that the omission or ambiguity was brought to the attention of the trial court either prior to entry of judgment or in conjunction with a motion under Section 657 or 663, it shall not be inferred on appeal or upon a motion under Section 657 or 663 that the trial court decided in favor of the prevailing party as to those facts or on that issue."

13

the attention of the trial court either prior to entry of judgment or in conjunction with' a new trial motion (§ 657) or a motion to vacate the judgment (§ 663), thus allowing the court to respond to objections before the taking of an appeal. The second step is not a substitute for the first. Objections are germane only as to issues framed as materially controverted under section 632." (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 982 (*Thompson*); accord, *Arceneaux*, *supra*, 51 Cal.3d at p. 1133 [same]; *Fladeboe*, *supra*, 150 Cal.App.4th at p. 58 [same].)

### 3. Nullification of the Doctrine of Implied Findings.

" 'When findings on material subsidiary issues of fact are requested *or* when the omission of such findings is brought to the trial court's attention prior to entry of judgment, the trial court is required to make such findings.' " (*Arceneaux*, *supra*, 51 Cal.3d at p. 1137.) " 'If it does not do so, it cannot be inferred on appeal that the trial court found in favor of the prevailing party on the issues covered by the requested findings.' " (*Ibid.*; accord *Culbertson v. Cizek* (1964) 225 Cal.App.2d 451, 465–466 (*Culbertson*) [recognizing that if the statement of decision does not resolve a controverted issue, and the omission was brought to the attention of the trial court, "it shall not be inferred on appeal . . . that the trial court decided in favor of the prevailing party as to those facts or on that issue"].)

To negate the doctrine of implied findings, the objections to a statement of decision must be specific, meaning the alleged omission or ambiguity "must be identified with sufficient particularly to allow the trial court to correct the defect." (*People v. ConAgra Grocery Products Co.* (2017) 17 Cal.App.5th 51, 81.) " ' "By filing specific objections to the court's statement of decision a party pinpoints alleged deficiencies in the statement and allows the court to

14

focus on the facts or issues the party contends were not resolved or whose resolution is ambiguous." ' " (*Orange County Water Dist. v. Alcoa Global Fasteners, Inc.* (2017) 12 Cal.App.5th 252, 312.) "These requirements apply to omissions or ambiguities in a court's *factual* findings only. Since the doctrine of implied findings does not apply to the court's legal conclusions (which are reviewed de novo on appeal), this procedure does not apply to potential errors of law." (*Ibid*.)

As we explained, *ante*, in this matter Casa Verde identified specifically those material and controverted issues requiring greater explanation to clear up ambiguities and alleged calculation errors. However, the trial court did not provide further guidance to the parties about how it reached its conclusions.

*B. The SOD and Resulting Judgment Omitted Material Controverted Issues.*

Casa Verde contends the judgment must be reversed because the trial court prejudicially erred when it failed to make findings on, and resolve, material controverted issues Casa Verde brought to the court's attention in its Request for Explanation and in its Set-Aside Motion. We agree. We turn our attention to three areas that remained unexplained in the court's SOD: Retentions, Mitigation, and Liquidated Damages. We start with retentions.

*1. Retention Amount Damages.*

In its Request for Explanation and Set-Aside Motion, Casa Verde argued the trial court made no findings regarding the retentions of $61,757.96 and $870 withheld by Lennar under the initial Groves Contract and change order No. 1, respectively. Casa Verde also argued that no evidence supported the finding that Lennar paid Casa Verde $17,184 under

15

change order No. 2. As Casa Verde explains, Lennar did not dispute that it made to Casa Verde only two of 12 payments totaling $6,444. Further, Casa Verde pointed out an inconsistency in the SOD regarding the balance owed Casa Verde for the Meadow Creek Project. Specifically, at the beginning of the SOD the court stated that balance as $27,188.50 but then credited Casa Verde only $18,548.50. Despite raising these issues and asking the court to address them, both before and after the entry of judgment, the court ignored them. That places the case in a challenging position with respect to appellate review.

We conclude the trial court's SOD is deficient because the court did not make any findings regarding disposition of the retentions withheld by Lennar under the Groves Contract (including change order No. 1). Indeed, the record shows Lennar and the City accepted phase one of the Groves Contract involving the construction of the park's hardscape and softscape. Problems between the parties only arose during phase two involving the 12-month park maintenance extension. As a result of the court's not making any findings regarding the disposition of these retained amounts, we are unable to rely on the doctrine of implied findings. And with the nullification of the doctrine of implied findings, we cannot determine whether the court's damages calculations regarding retentions are correct or not as a matter of law. (See *Arceneaux, supra,* 51 Cal.3d at p. 1137; *Culbertson, supra,* 225 Cal.App.2d at pp. 465-466.)

We conclude the SOD is similarly flawed regarding the trial court's finding that Lennar paid Casa Verde $17,184 under change order No. 2. As summarized *ante,* the evidence strongly suggests that Lennar made only two payments to Casa Verde under this change order, for a total of $6,444 (after

16

withholding 10 percent).[8]  However, based on the court's finding, Lennar would have made more than *five* payments to Casa Verde (i.e., $17,184/$3,222 = 5.33 payments).

Although Casa Verde twice raised this damage calculation issue, the trial court did not address it, and we have no way of resolving this conflict on appeal.  (See *DeArmond v. Southern Pacific Co.* (1967) 253 Cal.App.2d 648, 658 [noting the "broad purpose of the amendment [to the statutory statement of decision process] seems to have been to alleviate the frustration of losing litigants and their attorneys confronted with non-communicative trial judges," and further noting "[if] findings are to serve any purpose they should, as section 632 now requires[,] 'fairly disclose the court's determination of *all* issues of fact' " (italics added)]; *Niko, supra*, 144 Cal.App.4th at p. 365 [as a court of review, our role is not to reweigh the evidence and make new findings but instead determine whether a finding is supported by substantial evidence].)

Lennar, however, contends that substantial evidence supports the trial court's finding regarding the amount paid Casa Verde under change order No. 2.  Specifically, it contends the court *could* have taken the total amount due under this change order (i.e., $42,960), and subtracted $25,776 from this amount, which was the "Open Balance" in Exhibit 12, to reach the $17,184 figure.  Lennar's response underscores why the court's SOD creates confusion

---

8      Also, the trial court found the 12-month maintenance contract began on February 21, 2018, and concluded on February 21, 2019.  However, it appears the contract started March 1, 2018.  Casa Verde's first invoice for work under change order No. 2 was dated April 30, 2018, in the amount of $3,580, with a due date of May 30, 2018; and its second invoice was dated May 31, 2018, in the same amount, with a due date of June 30, 2018.  Exhibit 12 confirmed both invoice dates and the amounts due.  Based on this record the court on remand may wish to clarify its finding here.

requiring clarification. The arithmetical process described by Lennar may be what the court did, but we do not know. Further, we are uncertain using Lennar's explanation above why three months of the 12-month contract would not be included in the computation.

In any event, what we see above is why the doctrine of implied findings is limited and inapplicable here. The appellate court should not be left guessing about how a trial court reached a conclusion. What the court *could* have done is not the test. (See *Arceneaux*, *supra*, 51 Cal.3d at p. 1137; *Culbertson*, *supra*, 225 Cal.App.2d at pp. 465-466; see also *Parker v. Contractors State License Bd.* (1986) 187 Cal.App.3d 205, 211 ["Failure to make a finding . . . is normally reversible error unless [an appellate court] concludes that there is no substantial evidence to support the position of the appealing party."].)

Also, in calculating Lennar's damages for the Groves Contract breach by Casa Verde, the trial court did not address the apparent discrepancy in the SOD between what the court found as the balance due on the Meadow Creek Project (i.e., $27,188.50), and the credit it gave Casa Verde (i.e., $18,548.50). "A proper statement of decision is essential to effective appellate review. 'Without a statement of decision, the judgment is effectively insulated from review by the substantial evidence rule,' as we would have no means of ascertaining the trial court's reasoning or determining whether its findings on disputed factual issues support the judgment as a matter of law.' [Citation.]" (*Thompson*, *supra*, 6 Cal.App.5th at p. 982.) The instant case is a prime example of why the rules regarding a proper statement of decision exist, as we too have "no means of ascertaining" whether the trial court's computation of damages is correct as a matter of law. (See *ibid.*)

18

## 2. *Mitigation Damages.*

We also conclude another flaw hobbled the trial court's SOD: The failure to address whether cross-complainant Lennar Communities was required to mitigate its damages by terminating change order No. 2 sooner. The omission of this issue is puzzling because the court specifically asked the parties to address it in their closing briefs.

"It is well established in California that a party injured by a breach of contract is required to do everything reasonably possible to minimize [the party's] own loss and thus reduce the damages for which the other party has become liable." (*Sackett v. Spindler* (1967) 248 Cal.App.2d 220, 238 (*Sackett*).) The mitigation of damages doctrine provides that a " 'plaintiff who suffers damage as a result of . . . a breach of contract . . . has a duty to take reasonable steps to mitigate those damages and will not be able to recover for any losses which could have been thus avoided.' " (*Valle de Oro Bank v. Gamboa* (1994) 26 Cal.App.4th 1686, 1691 (*Gamboa*).) "The question of whether the injured party has acted reasonably in mitigating damages is one of fact. (*Sackett*, at p. 239; accord, *Nielsen v. Farrington* (1990) 223 Cal.App.3d 1582, 1589-1590 (*Nielsen*) ["Whether a party has exercised diligence in attempting to mitigate damages is a question for the trial court which will be upheld on appeal if there is substantial evidence."].) "The burden of proving a plaintiff [or cross-complainant] failed to mitigate damages . . . is on the defendant [or cross-defendant]." (*Powerhouse Motorsports Group, Inc. v. Yamaha Motor Corp., U.S.A.* (2013) 221 Cal.App.4th 867, 884.)

Here, the trial court's SOD omitted any discussion of whether Lennar acted reasonably by waiting until late December 2018 to officially terminate the contract with Casa Verde. Indeed, the record before us shows Lennar

19

stopped payments to Casa Verde after May 2018. Lennar ostensibly made only two of 12 payments under change order No. 2. Lennar expressed to Casa Verde as early as July 2018 its dissatisfaction with the park's landscaping maintenance. Smith testified that about that time he decided to terminate Casa Verde's contract. Lennar began discussions with other subcontractors to take over for Casa Verde because Lennar had already decided Casa Verde was in breach of the maintenance contract. Nonetheless, Lennar continued to encourage Casa Verde to fix the landscaping problems at the park, including as late as December 18 when it emailed Casa Verde asking for a "plan" to rehabilitate the landscape. Finally, Lennar hired Park West, in January 2019, for more than *twice* the value of Casa Verde's landscape maintenance contract.

Whether Lennar exercised diligence in attempting to mitigate its damages is, as demonstrated by this record, a material question of fact the court did not resolve. Again, we find ourselves unable to review for substantial evidence whether Lennar acted reasonably in waiting until the end of December 2018 to terminate change order No. 2. And, if Lennar acted unreasonably, whether any damages are attributable to that failure. (See *Gamboa*, *supra*, 26 Cal.App.4th at p. 1691; *Nielsen*, *supra*, 223 Cal.App.3d at pp. 1589-1590; *Sackett*, *supra*, 248 Cal.App.2d at p. 238.) We are in no position to evaluate this issue given the SOD's silence on it.

For the same reason, we are unable to determine whether the $39,886.44 in "delay damages" awarded to Lennar for water charges should stand. For instance, might Lennar have "avoided" some or all these charges by terminating its contract with Casa Verde sooner? (See *Gamboa*, *supra*, 26 Cal.App.4th at p. 1691; *Nielsen*, *supra*, 223 Cal.App.3d at pp. 1589-1590; *Sackett*, *supra*, 248 Cal.App.2d at p. 238.) Indeed, in its SOD the court found

20

the "failure" of Casa Verde to "fulfill the obligations of the contract became evident at the time that Lennar withheld payment." However, the SOD is silent on whether Lennar's delay in terminating Casa Verde contributed to the seven-month delay in the park's turn over to the City. And is again silent as to whether Lennar could have avoided these ensuing "delay damages" – this was a question for the trial court to resolve as trier of fact.

### 3. *Liquidated Damages.*

In addition to the retention and mitigation damages, at the close of evidence, the trial court also asked the parties to address whether the liquidated damages clause in the Groves Contract applied. Section 1.8.3 of the Groves Contract sets forth the liquidated damages clause:

> Subcontractor [Casa Verde] and Contractor [Lennar] . . . acknowledge and agree that if the Work[9] is not completed by Subcontractor within the Contract Completion Time,[10] subject to Permitted Delays, Contractor will suffer substantial damages which are, at the date of execution of this Agreement, extremely difficult and impracticable to ascertain. Therefore, Contractor and Subcontractor agree that if Subcontractor shall fail to complete the Work within the Contract Completion Time, Subcontractor shall pay Contractor as liquidated damages . . . the amount of

---

9      "Work" is defined to include "the furnishing of all labor, equipment, tools, sewer, materials, and whatever may be deemed necessary and/or required and incidental to finish and complete all of the work of construction in each of such items as required by the Plans, Specifications, codes, and ordinances. . . . The Work shall include whatever may be necessary to complete all items described by the plans, specifications, codes, Governing Bodies, Geotechnical Consultant and/or the Engineer."

10      "Contract Completion Time" is defined as "the Work without delay and/or interruption to its completion within the time allotted in the Construction Schedule."

damages Contractor will suffer due solely for delay[,] the daily amount determined by multiplying the Daily Contract Price (as defined herein) by five percent (5%), per day for each calendar day beyond the Contract Completion Date that the Work has not been completed, *rounded up to the next $100 increment*. For purposes of this Section 1.8.3, the 'Daily Contract Price' is the Contract Price divided by the number of days in which the Work is to be completed . . . . Notwithstanding anything in the foregoing to the contrary, Contractor and Subcontractor acknowledge and agree that this liquidated damages provision shall only apply to damages caused by Subcontractor's failure to complete the Project within the Contract Completion Time.

(Italics added.)

Casa Verde argued in its Set-Aside Motion that if Lennar was entitled to any delay damages, section 1.8.3 addressed the damage amount. Casa Verde noted that the delay began on March 2, 2019, the first day after Casa Verde's maintenance contract should have expired, and continued through September 12, 2019, when Lennar stopped being billed for water usage, a difference of 195 days; that the daily contract price was $117.75 per day (i.e., $42,980/365 days as a result of the one-year maintenance extension); that under 1.8.3, the liquidated damages was $5.88 per day (i.e., $117.75 x 5 percent); and that because the court expressly found in the SOD the turn over of the park was delayed by seven months, at most Lennar was entitled to a credit of "$1,148.10" (i.e., $5.88/day x 195 days) and not $39,886.44 as

awarded by the court.[11] The court in its minute order dismissing the Set-Aside Motion did not address this point.

Lennar claims the trial court properly omitted discussion of liquidated damages because: (1) Casa Verde "waived"[12] all arguments regarding section 1.8.3 by failing to raise it in the trial court; and, (2) the supporting exhibit for liquidated damages that Casa Verde attached to the contract it submitted to the trial court actually belonged to a separate, unrelated project ("Pioneer Ave Improvement"), and, therefore, the trial court lacked necessary information to calculate the liquidated damages formula.

We think Casa Verde has the stronger position. As noted, the trial court specifically asked the parties to explain in their filed closing arguments the applicability of the liquidated damages contract clause.[13] Casa Verde

---

[11] Casa Verde argues similarly in their opening brief; however, Casa Verde adjusts the end of the delay from September 12th to September 30th (the date the park was accepted by the City). This change accounts for an additional 18 days delayed, or 213 days in total. And in Casa Verde's argument, therefore, a credit, if any, of "$1,253.49" (i.e., $5.88/day x 213 days) would be due to Lennar.

[12] "[T]he correct legal term for the loss of a right based on failure to assert it timely is 'forfeiture,' because a person who fails to preserve a claim forfeits that claim. In contrast, a waiver is the ' "intentional relinquishment or abandonment of a known right." ' " (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. 2.) We believe Lennar intended to say forfeiture and analyze their claim accordingly.

[13] Casa Verde failed to address the liquidated damages issue in its closing brief. In this context we find that omission immaterial.

raised the issue in its Set-Aside Motion made pursuant to section 663.[14] (See *Forman v. Knapp Press* (1985) 173 Cal.App.3d 200, 203 [section 663 "empowers a trial court, on motion of '[a] party . . . entitl[ed] . . . to a different judgment' from that which has been entered, to vacate its judgment and enter 'another and different judgment' "].)  Unfortunately, the minute order summarily denying the Set-Aside Motion did not address whether section 1.8.3 of the Groves Contract applied in this case.  Although the parties on appeal make arguments to support their respective positions regarding how to treat liquidated damages, we find it unnecessary to resolve the issue because as we will explain, we conclude the failure to address the question at all, along with the others we discussed, created prejudicial error.

### 4. The Error Was Prejudicial.

We conclude the trial court's errors in this case are prejudicial, requiring reversal of the judgment.  (See *Guardianship of Brown* (1976) 16 Cal.3d 326, 335-336 [reversing under section 634 an order appointing a guardian based on a contested petition, after the trial court had failed to "ma[k]e an express finding" on the "material issue" of whether appointment of an incompetent person's wife or mother would be in his best interest, "particularly after this omission was brought to the attention of the court and

---

14    Section 663 provides in relevant part:  "A judgment or decree, when based upon a decision by the court . . . may, upon motion of the party aggrieved, be set aside and vacated by the same court, and another and different judgment entered, for either of the following causes, materially affecting the substantial rights of the party and entitling the party to a different judgment:  [¶] 1.  Incorrect or erroneous legal basis for the decision, not consistent with or not supported by the facts; and in such case when the judgment is set aside, the statement of decision shall be amended and corrected."

a request had been made for a further and specific finding"]; accord, *Hine v. Carmichael* (1962) 205 Cal.App.2d 663, 666 ["Failure to make definite findings on factual issues presented by pleadings, particularly where there is substantial evidence which would have sustained a finding for the appealing party, requires a reversal."].)

California Constitution, article VI, section 13, provides in pertinent part: "No judgment shall be set aside, . . . in any cause, . . . for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." The phrase "miscarriage of justice" means that a judgment cannot be reversed unless the reviewing court, " 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).) This rule of appellate review applies to civil cases, "precluding reversal unless the error resulted in a miscarriage of justice." (*Cassim v. Allstate Inc. Co.* (2004) 33 Cal.4th 780, 801 (*Cassim*).)

Here, the trial court gave no explanation and made no findings regarding disposition of the retentions under the Groves Contract; or why it found Casa Verde received more than five payments under change order No. 2 when substantial (if not undisputed) evidence shows it only received two such payments; or why Casa Verde was only entitled to a credit of $18,548.50 for Lennar's retention from the Meadow Creek Project, despite the court's express finding in the SOD that Lennar withheld $27,188.50 from Casa Verde for this project. Further, the trial court never explained why Lennar was or was not required to mitigate its damages. Finally, the court did not

explain why the Grove Contract liquidated damages provision was or was not applicable. The court expressly found "delay damages" existed due to additional water usage during what it found was a seven-month delay in turning over the park to the City. But the court did not explain the role of the liquidated damages clause in resolving that matter. Deciding these questions requires resolving evidentiary conflicts. This we cannot do, and the trial court's failure to make these findings is not harmless error. (See *Cassim*, *supra*, 33 Cal.4th at p. 801; *Watson*, *supra,* 46 Cal.2d at p. 836.)

### C. Directions on Remand.

Casa Verde on appeal does not challenge the finding that it breached change order No. 2 (as part of the Groves Contract). Instead, as we discussed, Casa Verde challenges the court's computation of damages arising from Casa Verde's work on both the Groves and Meadow Creek Projects. As a result, we conclude a new trial is unnecessary on remand.

Our conclusion is guided by the decision in *Morris v. Thogmartin* (1973) 29 Cal.App.3d 922 (*Morris*). The plaintiff in *Morris* was injured in a store owned by the defendants during a fight between third parties and the defendants' employee. (*Id.* at pp. 924-925.) The trial court issued its proposed findings of fact and conclusions of law under former section 632, awarding the plaintiff general and special damages due to the negligence of the defendants' employee. (*Id.* at p. 925.) The defendants objected, requesting the court make additional findings regarding the foreseeability of harm to the plaintiff resulting from the defendants' acts or omissions; the nature and duty owed by a defendant shopkeeper to a plaintiff customer; and the acts of the defendants that constituted breach of that duty. The trial

court denied the defendants' objections and their request for additional findings. (*Id.* at pp. 926-927.)

In reversing, the *Morris* court concluded the trial court erred by failing under section 634 to make the additional findings requested by the defendants. (*Morris*, *supra*, 29 Cal.App.3d at p. 924.) The *Morris* court nonetheless found the evidence supported the judgment for the plaintiff (*ibid.*); that a new trial was "not necessary" on remand (*id.* at p. 930); and that the remand would be for the "limited purpose" of allowing the trial court to make the omitted findings (*id.* at p. 924). It directed the trial court to "vacate its findings of fact and conclusions of law and its judgment entered thereon; to permit either side to introduce any additional evidence if so requested; and thereafter, to make new findings of fact and conclusions of law upon the basis of evidence previously presented and such additional evidence as may be presented and . . . enter judgment thereon." (*Id.* at pp. 930-931.)

Here, the record shows the parties already participated in a multiday bench trial. Because Casa Verde does not challenge the finding it breached change order No. 2 to the Groves Contract, we see no reason to order a retrial. Instead, as to damages only, we direct the trial court to vacate the judgment, its findings of fact, and conclusions of law. We further order the court to make new findings of fact and conclusions of law. At the court's discretion it may allow the parties to present any additional evidence or argument on remand.

## IV. DISPOSITION

The judgment for Lennar is reversed. On remand, the trial court is directed to (1) vacate its findings of fact and conclusions of law, limited to the issue of damages, arising from Casa Verde's breach of the Groves Contract; (2) make new findings of fact and conclusions of law based on evidence previously presented and, in the court's discretion, any additional evidence or argument the parties may present; and (3) enter a new judgment.

For purposes of this limited remand, we leave all questions regarding the computation of damages for the trial court to decide anew. Casa Verde is entitled to recover its costs of appeal. (See California Rules of Court, rule 8.278(a)(1).)

RUBIN, J.

WE CONCUR:

BUCHANAN, Acting P.J.

CASTILLO, J.

28